**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MAYOR AND CITY COUNCIL OF BALTIMORE,<br>100 N. Holliday Street<br>Baltimore, Maryland 21202,<br><br>　　　　*Plaintiff*,<br><br>　　v.<br><br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES,<br>99 New York Avenue, NE<br>Washington, DC 20226,<br><br>　　　　*Defendant*. | No. _____<br><br>**COMPLAINT** |

**INTRODUCTION**

1.　　In March 2023, 16-year-old Izaiah Carter was gunned down just outside of his high school in east Baltimore City. Described by his mother as a "big brother to everybody," Carter was a JROTC cadet and aspired to join the U.S. Air Force.[1]

2.　　Two months before that, 23-year-old Maya Morton was caught in crossfire and killed in her car on Pennsylvania Avenue in Baltimore City while picking up food from a restaurant. Morton was the mother of two boys, ages three and one, both of whom were in the car with her, and both of whom were critically injured in the resulting car crash.[2]

---

[1] Emma Tucker, *'I Want People to Know That Izaiah Was Your Kid – Your Daughter, Your Son' Says Mother Who Lost Her 16-Year-Old to Gun Violence*, CNN (Oct. 5, 2023, 6:15 AM), https://perma.cc/MBP6-VRZV.
[2] Keith Daniels, *Mother and Her Two Children Latest Innocent Victims Affected by Gun Violence in Baltimore*, WBFF Fox45 (Jan. 31, 2023, 11:33 PM), https://perma.cc/43RU-6JYN.

3. In October 2023, shots rang out at Carver Vocational-Technical High School as parents dropped their children off at school. In the end, two 15-year-olds and a 16-year-old were injured.[3]

4. Tragic stories involving gun violence are far too common in Baltimore. From 2015 through 2022, the City saw more than 300 homicides per year—the overwhelming majority of which were gun related. Of the more than 4,750 homicides reported in Baltimore since 2007, fully 84% were gun deaths.[4] And 60% of the guns recovered in Baltimore from 2017 to 2021 for which a source state could be identified originated outside of Maryland's borders.[5]

5. Preventing gun violence is a top priority of City officials and residents. In recent years, Baltimore has launched initiatives designed to do just that. For example, the Mayor's Office of Neighborhood Safety and Engagement ("MONSE") has invested in community-based organizations, has instituted summer youth curfews, and has developed the Group Violence Reduction Strategy, a focused deterrence program prioritizing those at the highest risk of involvement in gun violence.[6]

6. Baltimore has made significant headway in improving public safety. For the first time since 2015, Baltimore is on track to have fewer than 300 homicides a year and is currently at

---

[3] Rohan Mattu et al., *3 Students Injured, 2 Charged, in Shooting near Baltimore's Carver Vocational-Technical High School*, CBS News Balt. (Oct. 27, 2023, 11:13 PM), https://perma.cc/WZZ2-SKYJ.
[4] *Baltimore Homicides*, Balt. Sun, https://homicides.news.baltimoresun.com/?range=all&cause=all (last visited Dec. 18, 2023).
[5] ATF, National Firearms Commerce and Trafficking Assessment (NFCTA): Crime Guns - Volume Two, Baltimore, MD Report 3 (2023), https://perma.cc/J46P-B7TT.
[6] Press Release, Mayor's Off. of Neighborhood Safety & Engagement, MONSE Announces Fifth Round of ARPA Allocations to CVI Ecosystem Partners (Feb. 17, 2023), https://perma.cc/4ERJ-E2GW; Press Release, Mayor's Off. of Neighborhood Safety & Engagement, Mayor Scott, MONSE Release Update on Summer Youth Engagement Strategy Results (Sept. 29, 2023),

about a 25% reduction in homicides from 2022. Nonfatal shootings are also down from 2022.[7] And the summer of 2023 saw an 83% reduction of youth-involved homicides compared to the summer of 2022.[8] But Baltimore is determined to make more progress.

7. To do that, Baltimore knows that it needs to use every tool in its toolbox—and one of the most critical tools is up-to-date data about *the sources* of the guns being used to commit violence throughout the City. The flow of crime guns cannot be stopped without knowing where they most commonly come from—including from which gun stores.

8. The only source of this information is the Firearms Trace System database, which is maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). The Firearms Trace System database houses the information that is generated by ATF's firearm tracing process. That process is used by ATF to trace the history of guns recovered at crime scenes —from manufacture to distribution to sale—and to identify trends about sources, characteristics, and uses of crime guns. The information maintained in the database includes, among other things, the manufacturer, the wholesale/retail distributor, last known transfer, and recovery information pertaining to a crime gun.

9. On September 12, 2023, Mayor Scott, on behalf of the City of Baltimore, filed a Freedom of Information Act request (the "Request") with ATF, requesting records about the firearms recovered from crimes in Baltimore. Mayor Scott's FOIA Request sought, among other

---

https://perma.cc/KB4P-GH2T; *Group Violence Reduction Strategy (GVRS)*, MONSE, https://perma.cc/J33H-ZJNR (last visited Dec. 18, 2023).
[7] *Baltimore Public Safety Accountability Dashboard*, MONSE, https://app.powerbigov.us/view?r=eyJrIjoiZjcyZDY5NWYtNTBlZS00OTg0LTgyNDQtOWYw MDEyOGI5Y2M1IiwidCI6IjMxMmNiMTI2LWM2YWUtNGZjMi04MDBkLTMxOGU2NzljZ TZjNyJ9&pageName=ReportSectionb1fa0cb3c370416927ba (last visited Dec. 18, 2023).
[8] Press Release, Mayor's Off. of Neighborhood Safety & Engagement, Mayor Scott, MONSE Release Update on Summer Youth Engagement Strategy Results (Sept. 29, 2023), https://perma.cc/KB4P-GH2T.

3

things, information sufficient to identify the top 10 firearms dealer sources of crime guns, and information about the guns recovered from the scenes of some of the most heinous crimes, such as homicide, attempted homicide, aggravated assault, and robbery.

10. The Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, affords the public the right to request records from federal agencies. The federal government must provide the requested information unless it falls into one of nine narrow exemptions that allow the government to withhold information from the public. The information requested by Mayor Scott does not fall into any of those exemptions. ATF therefore was obligated to grant the Request and provide the information forthwith.

11. But, ATF denied the Request, based upon a passage buried in a 2012 federal appropriations bill colloquially known as the "Tiahrt Rider." ATF asserted that the Tiahrt Rider prohibits disclosure of the information under Exemption 3 of FOIA.

12. ATF is wrong. FOIA Exemption 3 provides that the government may withhold information if a separate statute: (1) specifically exempts disclosure of the information; (2) does so "in such a manner as to leave no discretion on the issue" or "establishes particular criteria for withholding"; and, (3) if the statute postdates the OPEN FOIA Act of 2009, it specifically cites to Exemption 3. *See* 5 U.S.C. § 552(b)(3).

13. Nothing in the Tiahrt Rider (which postdates the OPEN FOIA Act of 2009) exempts the requested data from disclosure under FOIA. To the contrary, the Tiahrt Rider makes no reference whatsoever to FOIA, let alone to Exemption 3.

14. Baltimore brings this action under FOIA for injunctive and other appropriate relief to challenge ATF's erroneous denial.

## JURISDICTION AND VENUE

15. This Court has both subject-matter jurisdiction over this action and personal jurisdiction over the parties under 5 U.S.C. §§ 552(a)(4)(B). The Court also has jurisdiction over this action under 28 U.S.C. §1331 and 5 U.S.C. §§ 701–06.

16. Defendant ATF is headquartered in Washington, DC. Venue therefore is proper in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391.

17. FOIA requires that agencies respond to FOIA requests and administrative appeals within 20 business days. *See* 5 U.S.C. § 552(a)(6)(A). The Office of Information Policy has failed to meet the statutory deadlines set by FOIA. *See id.* § 552(a)(6)(A)–(B). Plaintiff has thus exhausted all administrative remedies. 5 U.S.C. § 552(a)(6)(C).

## PARTIES

18. Plaintiff, the Mayor and City Council of Baltimore, is a municipal corporation organized and operating under the Baltimore City Charter and the laws of the State of Maryland. Plaintiff is also known as "City of Baltimore" or "Baltimore City."

19. Defendant ATF is an agency housed within the United States Department of Justice. The Department of Justice ("DOJ") is itself a Department of the Executive Branch of the United States Government and is an agency within the meaning of 5 U.S.C. §552(f)(1).

## FACTS

*ATF's Firearms Trace System Database*

20. When a local law enforcement agency recovers a firearm at a potential crime scene, the agency can submit a "tracing" request to ATF's National Tracing Center. "Tracing" is a tool used by ATF to determine the history of a firearm. The tracing process uses the firearm's markings and features—including serial number, manufacturer or importer abbreviations, type, model, and

caliber—to connect the path of a firearm from import or manufacture to distribution to sale. A successful trace returns to the requesting law enforcement agency the names of the manufacturer, importer, dealer, and initial retail purchaser of the gun. The trace summary also includes the dates that the gun was shipped to the dealer and was initially purchased. This information assists law enforcement in its investigation, and also identifies larger trends about gun violence in the relevant community (including, for example, whether most guns are coming from out-of-state and how much time passes between sales and gun crimes).

21. Whenever such a query is made, ATF records the data generated from the trace in its Firearms Tracing System database, and those records are known as "trace data."

22. Every year, relying on this trace data, ATF releases a number of reports, on a nationwide and state basis, showing, among other things: (i) the total number of firearms traced; (ii) the number of each type of firearm traced (pistols, rifles, revolvers, etc.); (iii) the categories of situations leading to the recovery (homicide, suicide, attempted suicide, aggravated assault, etc.); (iv) the source states for firearm traces; (v) the most common "time-to-crime" rates for firearm recoveries; and (vi) the ages of the possessors.[9]

23. Participating law enforcement agencies can access some of this trace data in an application known as eTrace. As a condition of accessing to eTrace, however, ATF prohibits participating law enforcement agencies from sharing certain trace data with unauthorized third parties. So, although the Baltimore Police Department has access to eTrace for law enforcement purposes, it may not provide critical information to any agency or department within the City government that may want to use that data to analyze trends to inform their policy decisions,

---

[9] *See, e.g.*, *Firearms Trace Data – 2022*, ATF, https://perma.cc/AK3N-CADZ (last reviewed Oct. 11, 2023).

conduct targeted outreach to gun stores, hold dealers accountable for unlawful conduct, or develop information campaigns.

*The Tiahrt Rider*

24. Since 2003, during its annual appropriations process, Congress has sometimes included a funding restriction on ATF relating to its Firearms Trace Database system. This funding restriction has come to be known as the "Tiahrt Rider" or the "Tiahrt Amendment" after its original sponsor, Representative Todd Tiahrt.

25. Over the years, the Tiahrt Rider has undergone a number of changes, including the addition of exceptions and clarifications. The most recent and currently only operative version of the Tiahrt Rider was approved as part of the 2012 Consolidated and Further Continuing Appropriations Act, Pub. L. 112-55, 125 Stat. 552, 609–10 (2011).

26. The current Tiahrt Rider begins with the basic limitation that "no funds appropriated under this or any other Act may be used to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms and Explosives."

27. The Rider next carves out three law-enforcement exceptions to its general prohibition on the use of appropriated funds. It exempts: "(1) a Federal, State, local, or tribal law enforcement agency, or a Federal, State, or local prosecutor; or (2) a foreign law enforcement agency solely in connection with or for use in a criminal investigation or prosecution; or (3) a Federal agency for a national security or intelligence purpose."

28. From there, the Rider lists a series of limitations on how the data provided to law enforcement under one of the three exceptions can be used or shared. Those limitations are:

7

a. First, the data cannot be provided to law enforcement under the three exceptions if it "would compromise the identity of any undercover law enforcement officer or confidential informant, or interfere with any case under investigation."

b. Next, "no person or entity described in (1), (2) or (3) shall knowingly and publicly disclose such data."

c. And third, all such disclosed data "shall be immune from legal process, shall not be subject to subpoena or other discovery, shall be inadmissible in evidence, and shall not be used, relied on, or disclosed in any manner, nor shall testimony or other evidence be permitted based on the data, in a civil action," other than proceedings commenced by the ATF in limited circumstances.

29. The Rider concludes by stating that the general appropriations limitation contained in the Rider "shall not be construed to prevent: (A) the disclosure of statistical information concerning total production, importation, and exportation by each licensed importer . . . and licensed manufacturer . . . ; (B) the sharing or exchange of such information among and between Federal, State, local or foreign law enforcement agencies . . . ; or (C) the publication of annual statistical reports on products regulated by the Bureau of Alcohol, Tobacco, Firearms and Explosives . . . , or statistical aggregate data regarding firearms traffickers and trafficking channels . . . ."

30. In sum, the Rider (1) starts with a general prohibition on the use of appropriated funds with respect to disclosure of the contents of the Firearms Trace System database, (2) carves out three exceptions to that general limitation on the use of appropriated funds, and (3) circumscribes the use of the data disclosed under one of the three exceptions. The Tiahrt Rider

never once mentions FOIA Exemption 3, FOIA more broadly, or even the Administrative Procedures Act, 5 U.S.C. § 500 *et seq.*

*Crime Guns in Baltimore*

31. Like many major U.S. cities, Baltimore is heavily impacted by gun violence and gun crime.

32. ATF performs tracing analysis, and generates trace data, for guns recovered from crime scenes in Baltimore. ATF reports that it recovered and traced 13,336 crime guns from Baltimore between 2017 and 2021.[10]

33. In 2020, an estimated two-thirds of guns associated with crime in Baltimore originated from outside Maryland.[11] According to one study, the State of Maryland had the highest rate of out-of-state crime gun "imports" in the country.[12] Gun traffickers transported three times as many firearms into Maryland as the national state average.[13] These guns contributed to Baltimore's epidemic of gun violence.

34. Academic studies confirm the prevalence of the underground gun market in Baltimore. One study showed that 30% of criminal justice-involved Baltimore men surveyed reported experience with the underground gun market in the past six months.[14] And 31% of those men reported that there were certain gun shop employees who sold guns under the table or made sales to obvious straw purchasers.[15]

---

[10] ATF, *supra* note 5, at 3.
[11] Ron Cassie, *Iron Pipeline*, Balt. Mag. (Nov. 18, 2020), https://perma.cc/U6C8-CRAM.
[12] *Id.*
[13] *Id.*
[14] Cassandra K. Crifasi et al., *Baltimore's Underground Gun Market: Availability of and Access to Guns*, 7 Violence & Gender 78 (2020).
[15] *Id.*

*Baltimore's FOIA Request*

35. Baltimore has a paramount interest in solving the gun violence and gun crime problems within its borders, including by implementing data-driven policies, holding accountable those who are the greatest sources of these crime guns, and educating the public about the source of crime guns. A key first step is to have better information about the origin, movement, and nature of crime guns recovered in Baltimore. ATF has this information in its Firearms Trace System database.

36. On September 12, 2023, Mayor Scott, on behalf of the City of Baltimore, submitted a FOIA Request to ATF for records that would serve as "critical tools for the City of Baltimore to address gun violence." The Request is attached as Exhibit 1 to this Complaint. The Request sought information about the sources, nature, and circumstances of firearms recovered in Baltimore and the circumstances of those recoveries. Baltimore's FOIA Request had four parts.

37. Part 1 of the Request sought records sufficient to identify the licensed gun dealers that comprised the top 10 sources of firearms recovered in Baltimore from 2018 through 2022, as well as specific information about those crime guns, including the time-to-crime of those guns and the circumstances under which each crime gun was recovered.

38. Part 2 of the Request asked for additional information about firearms recovered in Baltimore between 2018 and 2022 in connection with six specific circumstances: homicide; attempted homicide; aggravated assault; robbery; suicide; and attempted suicide. For firearms recovered in connection with each of these six circumstances, the request sought time-to-crime data, basic firearm information—manufacturer, weapon type, and caliber—and the source state. The Request noted that ATF already produces annual state-by-state data on the category of offense or other circumstance under which firearms were recovered.

39. With regard to both Parts 1 and 2, Baltimore specified that it would accept records that provide either aggregate data or individualized information.

40. Parts 3 and 4 of the Request sought data tables or spreadsheets that were used to compile two charts published in the report produced by ATF earlier this year on Baltimore crime guns. *See* ATF, National Firearms Commerce and Trafficking Assessment (NFCTA): Crime Guns - Volume Two, Baltimore, MD Report (2023). Specifically, the Request asked for any tables or spreadsheets used to compile the charts that list the "Top Source Cities" of firearms recovered in Baltimore and the "Top Recovery Cities" of firearms sourced from Baltimore.

41. Baltimore noted in the Request that it sought information from ATF's National Tracing Center's Firearms Tracing System and that Baltimore was aware that ATF often withholds this type of information. Baltimore explained, however, that ATF's asserted grounds for withholding such information—the Tiahrt Rider—is not a FOIA-withholding statute. Baltimore also observed that the requested data can be extracted merely by querying the Firearms Tracing System to extract a subset of data from that database, which does not require creating a new agency record under FOIA.

42. Baltimore's Request does not seek information that could reasonably be expected to interfere with law enforcement investigations nor does it seek information that would infringe on personal privacy – which FOIA itself exempts from disclosure. 5 U.S.C. §§ 552(b)(6), (7); *see also* 5 U.S.C. § 552(c).

43. While Baltimore's FOIA Request qualifies for a fee waiver, the City is willing to pay all costs associated with fulfilling its FOIA Request.

44. Nothing in the Tiahrt Rider excuses ATF's obligation to fulfill the City's Request.

*ATF Improperly Denies Baltimore's Request*

45. ATF denied Baltimore's FOIA request on September 30, 2023. That initial denial is attached as Exhibit 2 to the Complaint.

46. ATF's letter incorrectly asserted that the requested "information is exempt from disclosure pursuant to Exemption 3 of the FOIA and Public Law 112-55, 125 Stat. 552." ATF's letter then cited an outdated version of Exemption 3 of FOIA by stating that

> Exemption 3 of the FOIA permits the withholding of information prohibited from disclosure by another statute only if one of two disjunctive requirements are met: the statute either (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

47. However, the current version of Exemption 3 as amended by the OPEN FOIA Act of 2009 has another requirement. In addition to the disjunctive requirements noted above (5 U.S.C. § 552(b)(3)(A)), FOIA currently requires that the statute, "if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph." 5 U.S.C. § 552(b)(3)(B).

48. Further, citing the Tiahrt Rider, the denial letter asserted that "ATF can only provide certain [Gun Control Act] data to a law enforcement agency or a prosecutor solely in connection with a criminal investigation or prosecution."

49. The letter continued that "[s]ince the Fiscal Year 2006 through 2008 restrictions satisfy all the requirements of FOIA Exemption 3, and the 2012 language is perpetuated from those restrictions, [ATF was] withholding the trace data pursuant to 5 U.S.C. section 552 (b)(3) and Public Law 112-55, 125 Stat. 552."

50. However, the Tiahrt Rider does not satisfy all the requirements of FOIA Exemption 3. The only operative version of the Rider was enacted in 2012, which postdates the OPEN FOIA

Act of 2009, and it does not specifically cite to Exemption 3 or mention FOIA at all. Nor does it satisfy the requirements of 5 U.S.C. § 559.

51.     Baltimore filed an administrative appeal on November 15, 2023 to the Director of the Office of Information Policy ("OIP") at the United States Department of Justice. Baltimore's administrative appeal is attached as Exhibit 3 to the Complaint. OIP acknowledged receipt of Baltimore's administrative appeal the same day. This acknowledgement is attached as Exhibit 4 to the Complaint.

52.     Under FOIA, each agency shall "make a determination with respect to any appeal within twenty days (excepting Saturdays, Sundays, and legal public holidays) after receipt of such appeal." 5 U.S.C. § 552(a)(6)(A)(ii). "The 20-day period . . . shall commence on the date on which the request is first received by the appropriate component of the agency . . . ." *Id.* OIP's deadline to respond to the administrative appeal was therefore December 14, 2023.

53.     OIP did not respond to the administrative appeal by December 14, 2023, and has not responded as of the date of this filing.

54.     Notwithstanding OIP's failure to respond to Baltimore's administrative appeal, Baltimore "shall be deemed to have exhausted [its] administrative remedies with respect to [its] request." 5 U.S.C. § 552(a)(6)(C)(i).

**CLAIM FOR RELIEF**

**COUNT I**
**Violation of FOIA, 5 U.S.C. § 552**
**Wrongful Withholding of Non-Exempt Responsive Records**

55.     Plaintiff repeats and realleges paragraphs 1–54.

56.     To promote transparency in government, FOIA requires federal agencies—including ATF—to make agency records available to the public upon request, with limited exceptions.

57.     To fulfill this purpose, courts have required that FOIA be construed broadly to provide information to the public and that exemptions from production be construed narrowly. FOIA mandates a strong presumption in favor of disclosure.

58.     Under FOIA, the burden is on the government agency to show that the requested materials need not be produced because a particular FOIA exemption protects the material from disclosure under FOIA. No exemptions permit the withholding of the documents sought by Baltimore's Request.

59.     Contrary to the ATF's assertions, none of FOIA's statutory exemptions apply to Baltimore's FOIA Request and the Tiahrt Rider does not bar the disclosure of trace data under FOIA.

60.     ATF's failure to promptly make available the trace data requested by Baltimore's FOIA Request violates FOIA, 5 U.S.C. § 552(a)(3)(A).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

a) ORDER ATF to immediately and expeditiously produce the requested trace data responsive to ATF FOIA Request No. 2023-01644;

b) AWARD Plaintiff costs and reasonable attorney's fees incurred in this action; and

c) GRANT such other relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Gary A. Orseck

| | |
|---|---|
| Ebony M. Thompson | Gary A. Orseck (D.C. Bar # 433788) |
| Acting City Solicitor | Paul Brzyski* (D.C. Bar # 1723545) |
| Sara Gross | KRAMER LEVIN NAFTALIS & FRANKEL LLP |
| Chief, Affirmative Litigation Division | 2000 K Street NW, 4th Floor |
| Thomas P.G. Webb | Washington, DC 20006 |
| Chief Solicitor | Tel: (202) 775-4500 |
| BALTIMORE CITY | Fax: (202) 775-4510 |
|    DEPARTMENT OF LAW | gorseck@kramerlevin.com |
| City Hall | |
| 100 North Holiday Street, Suite 109 | Alla Lefkowitz* (D.C. Bar # 1048271) |
| Baltimore, Maryland 21202 | EVERYTOWN LAW |
| Tel: (410) 396-3947 | P.O. Box 14780 |
| Fax: (410) 574-1025 | Washington, DC 20044 |
| Ebony.Thompson@baltimorecity.gov | Tel: (202) 545-3257 |
| | alefkowitz@everytown.org |

Aaron Esty*
Mollie Krent*
EVERYTOWN LAW
450 Lexington Avenue, P.O. Box 4184
New York, NY 10017
Tel: (646) 324-8369
aesty@everytown.org
mkrent@everytown.org

*Pro hac vice application forthcoming*

Dated: December 18, 2023