# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARYLAND AND CITY COUNCIL OF BALTIMORE, ) ) ) | |
| Plaintiff, ) ) ) | |
| v. ) ) ) | Case No. 1:23-cv-03762-RDM |
| BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, ) ) ) | |
| Defendant. ) ) | |

## MEMORANDUM IN SUPPORT OF THE NATIONAL SHOOTING SPORTS FOUNDATION, INC.'S MOTION TO INTERVENE

Defendant-Intervenor National Shooting Sports Foundation, Inc. ("NSSF") submits this memorandum in support of its motion to intervene.

Respectfully submitted this 23rd day of January 2024,

/s/John Parker Sweeney
John Parker Sweeney, Esq. (#914135)
James W. Porter, III, Esq. (#999070)
1615 L Street NW, Suite 1350
Washington, DC 20036
(202) 393-7150
jsweeney@bradley.com
jporter@bradley.com

ATTORNEYS FOR INTERVENOR NATIONAL SHOOTING SPORTS FOUNDATION, INC.

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ......................................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................ 1

ARGUMENT ................................................................................................................................. 2

    I.    NSSF is entitled to intervene as of right under Rule 24(a). ................................................. 2

        A.    NSSF has Article III standing. ..................................................................................... 2

        B.    NSSF also meets the four requirements of Rule 24(a). ............................................... 6

    II.    This Court should alternatively permit NSSF to intervene under Rule 24(b). .................. 8

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

*100Reporters, LLC v. U.S. Dep't of Justice*,
  307 F.R.D. 269, 279 (D.D.C. 2014) .................................................................................. 7, 8, 9

*Appleton v. F.D.A.*,
  310 F. Supp. 2d 194, 197 (D.D.C. 2004) ................................................................................ 8

*Atl. Refinishing & Restoration, Inc. v. Travelers Cas. & Sur. Co. of Am.*,
  272 F.R.D. 26, 29 (D.D.C. 2010) ............................................................................................ 9

*Bldg. & Constr. Trades Dep't, AFL-CIO v. Reich*,
  40 F.3d 1275, 1282 (D.C. Cir. 1994) ...................................................................................... 2

*Center for Sustainable Economy v. Jewell*,
  779 F.3d 588, 596 (D.C. Cir. 2015) ................................................................................ 5, 6, 7

*Food Marketing Inst. v. Argus Leader Media*,
  139 S. Ct. 2356, 2362 (2019) ............................................................................................ 2, 4, 5

*Fund for Animals, Inc. v. Norton*,
  322 F.3d 728, 731 (D.C. Cir. 2003) ................................................................................ passim

*Hunt v. Wash. State Apple Adver. Comm'n*,
  432 U.S. 333, 343 (1977) ................................................................................................ 2, 5, 7

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555, 560–61 (1992) ........................................................................................... 2, 4, 5

*Navistar, Inc. v. Jackson*,
  840 F. Supp. 2d 357, 361 (D.D.C. 2012) ................................................................................ 6

*Pub. Citizen Health Research Grp. v. FDA*,
  185 F.3d 898, 900 (D.C. Cir. 1999) .................................................................................... 3, 5

*Roane v. Leonhart*,
  741 F.3d 147, 151 (D.C. Cir. 2014) ........................................................................................ 6

*Smoke v. Norton*,
  252 F.3d 468, 471 (D.C. Cir. 2001) .................................................................................... 6, 8

*Swan v. SEC*,
  96 F.3d 498, 500 (D.C. Cir. 1996) .......................................................................................... 7

*Trbovich v. United Mine Workers of Am.*,
  404 U.S. 528, 538 n.10 (1972) ................................................................................................ 8

**Statutes and Rules**

18 U.S.C. § 923(g)(1)(A) .................................................................................................. 2, 3, 4

18 U.S.C. § 926(a)(3) ............................................................................................................ 4, 6

Consolidated and Further Continuing Appropriations Act, 2012,
  Pub. L. No. 112-55, 125 Stat. 552, 609–10 (2011) (codified at 18 U.S.C. § 923 note) ..... 4, 6, 8

27 C.F.R. § 478.124(a) ............................................................................................................. 2, 5

27 C.F.R. § 478.125(e) ............................................................................................................ 2, 3, 5

27 C.F.R. § 478.25(a) ................................................................................................................... 5

Fed. R. Civ. P. 24(a)(2) .................................................................................... ……passim

Bureau of Alcohol, Tobacco, Firearms and Explosives, Fact Sheet: National Training Center
  (2023) .................................................................................................................................. 4

Bureau of Alcohol, Tobacco, Firearms and Explosives, Crime Gun Trace Analysis Report: The
  Illegal Youth Firearms Market in Detroit (February 1999) ...................................................... 7

Office of Management and Budget, OMB No. 1140-0020, Firearms Transaction Record
  (revised August 2023) ...................................................................……………………. …..3

## INTRODUCTION

The National Shooting Sports Foundation, Inc. ("NSSF") submits this memorandum in support of its motion to intervene pursuant to Federal Rule of Civil Procedure 24(a) and (b) to oppose public disclosure of agency records under the Freedom of Information Act, 5 U.S.C. § 552.

NSSF is the trade association for the firearms industry. NSSF's membership includes thousands of federally licensed firearms manufacturers, distributors, and retailers, among others. NSSF's federally licensed members are required by federal law to provide the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") confidential information about the acquisition and disposition of firearms. NSSF's members – and by extension, NSSF – have an interest in protecting that confidential information from public disclosure or from government use other than criminal law enforcement. NSSF respectfully moves for intervention to protect these interests.

## STATEMENT OF FACTS

Plaintiff Maryland and City Council of Baltimore's ("City of Baltimore") FOIA requests seek the release of four broad categories of documents: The first request seeks records sufficient to identify the licensed firearm dealers comprising the top ten sources of firearms recovered in Baltimore from 2018 through 2022, as well as specific information about those firearms, including the time-to-crime of those firearms and the circumstances under which each firearm was recovered. The second request seeks information about firearms recovered in Baltimore between 2018 and 2022 in connection with homicide, attempted homicide, aggravated assault, robbery, suicide, and attempted suicide. The third and fourth requests seek data tables or spreadsheets that were used to compile two charts published in the report produced by ATF earlier this year on Baltimore crime involving firearms. (Doc. 1-1).

1

The ATF denied Plaintiff's request on September 30, 2023. (Doc. 1-2). Plaintiff filed suit, alleging that the ATF wrongfully withheld non-exempt responsive agency records in violation of the FOIA. (Doc. 1 at 14, ¶ 55).

## ARGUMENT

**I.    NSSF is entitled to intervene as of right under Rule 24(a).**

Federal Rule of Civil Procedure 24(a) sets out the requirements for intervention as of right. Fed. R. Civ. P. 24(a)(2). Rule 24(a) entitles NSSF to intervene as of right where it shows: (1) that its motion is timely; (2) that it has an interest in the action; (3) that final disposition of the action "may as a practical matter impair or impede [NSSF's] ability to protect that interest"; and (4) that the existing parties do not adequately represent NSSF's interests. *Fund for Animals*, 322 F.3d at 731 (citation omitted). NSSF must also demonstrate that it has Article III standing. *Bldg. & Constr. Trades Dep't, AFL-CIO v. Reich*, 40 F.3d 1275, 1282 (D.C. Cir. 1994). NSSF has standing and meets all four requirements under Rule 24(a).

**A.   NSSF has Article III standing.**

To establish standing under Article III, a prospective intervenor must show: (1) injury-in-fact, (2) causation, and (3) redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). A trade association has standing when FOIA disclosure would cause the trade association's members some injury. *See Food Marketing Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2362 (2019).

Federal law requires a Federal Firearms Licensee ("FFL") to maintain acquisition and disposition records for any firearm it takes into inventory. 18 U.S.C. § 923(g)(1)(A). The FFL must record the transaction using ATF Form 4473. 27 C.F.R. § 478.124(a). The acquisition record must include the manufacturer, model, serial number, type, and caliber of the firearm. *See* 27

2

C.F.R. § 478.125(e). The disposition record must also include the date the firearm was transferred as well as certain identifying information about the transferee – whether another FFL or an individual. 18 U.S.C. § 923(g)(1)(A); 27 C.F.R. § 478.125(e). Completing Form 4473 also requires the transferee to disclose to the FFL a significant amount of personal identifying information. *See generally* Office of Management and Budget, OMB No. 1140-0020, *Firearms Transaction Record* (revised August 2023).

Federal law requires all FFLs to provide any acquisition and disposition records including Form 4473s when requested by the ATF as part of its "crime gun traces" and criminal investigations. *See* 18 U.S.C. § 923(g)(1)(B), (g)(7); 27 C.F.R. § 478.25(a). Between 2000 and 2021, the ATF completed more than 7.6 million "crime gun traces," requesting acquisition and disposition records from more than 231,000 retail and wholesale firearms dealers, and more than 13,000 licensed manufacturers and importers. And in 2022 alone, the ATF processed more than 623,000 trace requests. Bureau of Alcohol, Tobacco, Firearms and Explosives, *Fact Sheet: National Tracing Center* 2 (2023). The ATF's "crime gun traces" have resulted in the mandatory production to ATF of sensitive and confidential information about millions of law-abiding individual gun purchasers, hundreds of thousands of law-abiding retail and wholesale firearms dealers, and thousands of law-abiding manufacturers and importers.

Each of those individuals, retailers, wholesalers, manufacturers, and importers has legally protectable privacy and/or proprietary interests in the sensitive and confidential information contained in the acquisition and disposition records. *See Pub. Citizen Health Research Grp. v. FDA*, 185 F.3d 898, 900 (D.C. Cir. 1999) (recognizing that the submitter of documents to a government agency has a cognizable interest in maintaining the confidentiality of those documents). Congress recognized these protectable interests in the Firearm Owners' Protection

3

Act of 1986, which prohibits the federal government from acquiring or maintaining these firearm acquisition and disposition records except in the course of a criminal investigation. 18 U.S.C. § 926(a)(3); *see also* Bureau of Alcohol, Tobacco, Firearms and Explosives, *Fact Sheet: National Tracing Center* 1 (2023) ("ATF's National Tracing Center is only authorized to trace a firearm for a law enforcement agency involved in a bona fide criminal investigation."). Moreover, a provision of the Consolidated and Further Continuing Appropriations Act of 2012, commonly referred to as the "Tiahrt Rider," assures every entity producing information that the ATF will protect that information from public disclosure. *See* Consolidated and Further Continuing Appropriations Act, 2012, Pub. L. No. 112-55, 125 Stat. 552, 609–10 (2011) (codified at 18 U.S.C. § 923 note) ("[N]o person or entity . . . shall knowingly and publicly disclose such data."); s*ee also Food Marketing Inst.*, 139 S. Ct. at 2362–63 (concluding that a characteristic of information that is "confidential" for FOIA purposes is that it is submitted to agency with assurances that the agency will keep the information private).

Like the Firearm Owners' Protection Act, the 2012 Tiahrt Rider prohibits the ATF from "consolidating or centralizing" records maintained by FFLs. 125 Stat. at 609. It also prohibits the ATF from disclosing any information in the Firearms Trace System database or any information provided to it by FFLs unless disclosure is required for law enforcement or national security purposes. *Id.* at 609–10. And the Tiahrt Rider prohibits any records or information produced under the law enforcement exception from being publicly disclosed or used "in a civil action in any State . . . or Federal court or in an administrative proceeding other than a proceeding commenced by the [ATF]." *Id.* at 610.

Public disclosure of that sensitive and confidential law enforcement information under the FOIA is a concrete and particularized harm, and Plaintiff's FOIA request makes the threat of that

4

harm imminent. *Food Marketing Inst.*, 139 S. Ct. at 2362–63; *see also Lujan*, 504 U.S. at 560–61. For that reason, the imminent harm of disclosure is "fairly traceable" to Plaintiff's FOIA requests, and a decision from this Court denying those requests would provide the most effective redress for that harm by preventing it before it occurs. *See Lujan*, 504 U.S. at 560. "Congress has instructed that the disclosure requirements of the Freedom of Information Act do 'not apply' to 'confidential' private-sector 'commercial or financial information' in the government's possession." *Food Marketing Inst.*, 139 S. Ct. at 2360. "At least where commercial or financial information is both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy, the information is 'confidential' within the meaning of Exemption 4." *Id.* at 2366.

The individuals, retailers, wholesalers, manufacturers, and importers whose confidential information has been produced to the ATF have standing to challenge Plaintiff's FOIA requests and prevent the ATF's production of this information. And because many of those individuals, retailers, wholesalers, manufacturers, and importers are members of the NSSF, the NSSF has standing to bring suit on their behalf. *See Food Marketing Inst.,* 139 S. Ct. at 2362; *Center for Sustainable Economy v. Jewell*, 779 F.3d 588, 596 (D.C. Cir. 2015). An association has standing to bring suit on its members' behalf when: (1) its members would have standing in their own right; (2) "the interests it seeks to protect are germane to the organization's purpose"; and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).

Those requirements are met here. As discussed above, the NSSF's members whose information was disclosed to the ATF would have standing to challenge the FOIA requests. Protecting its members from injury flowing from producing information to the ATF is a core

function of the NSSF – it is certainly, at minimum, a "germane" one. And it is not necessary for any individual NSSF member to participate in this lawsuit because granting NSSF its requested relief will provide full redress to all NSSF members (and will be the most efficient use of judicial resources). The NSSF has Article III standing to intervene in this case. *See Jewell*, 779 F.3d at 596–97.

### B. NSSF also meets the four requirements of Rule 24(a).

*First*, NSSF's motion to intervene is timely. To determine timeliness, this Court considers all relevant circumstances, including the proximity in time of the motion to intervene to the filing of the complaint, as well as any unfair prejudice existing parties would suffer as a result of intervention. *See Smoke v. Norton*, 252 F.3d 468, 471 (D.C. Cir. 2001).

NSSF filed its motion to intervene less than five weeks after Plaintiff filed its complaint. (*See* Doc. 1). This Court has routinely determined that such a close temporal proximity supports a finding of timeliness. *See, e.g.*, *Fund for Animals*, 322 F.3d at 735 (finding motion to intervene was timely because it was filed "less than two months after the plaintiffs filed their complaint"). And while "measuring the length of time passed is not in itself the determinative test," *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014) (internal quotation marks and citation omitted), intervention will not unfairly harm Plaintiff or the ATF. As of now, there has been no discovery or substantive progress in the case. *Cf. Navistar, Inc. v. Jackson*, 840 F. Supp. 2d 357, 361 (D.D.C. 2012) (finding intervention motion timely when it was filed "before any discovery or substantive progress had been made in the case"). The ATF has not even filed responsive pleadings. *See Fund for Animals*, 322 F.3d at 735 (finding intervention motion timely when it was filed "before the defendants filed an answer"). Intervention will not prejudice – unfairly or otherwise – any party, and NSSF's motion is timely.

6

***Second***, NSSF has a cognizable interest in the subject of this action for the same reasons it has standing. *See Fund for Animals*, 322 F.3d at 735 ("Our conclusion that the NRD has constitutional standing is alone sufficient to establish that the NRD has 'an interest relating to the property or transaction which is the subject of the action[.]'" (quoting Fed. R. Civ. P. 24(a)(2))).

***Third***, the disposition of Plaintiff's FOIA suit would injure the privacy and/or proprietary interests of NSSF's members and their customers and have the practical effect of impairing the NSSF's ability to preserve the confidentiality of its members' sensitive information. Injury is "especially obvious in FOIA litigation because if the plaintiff succeeds, the public release of the requested materials is both imminent and irreversible." *100Reporters, LLC v. U.S. Dep't of Justice*, 307 F.R.D. 269, 279 (D.D.C. 2014); *see also Swan v. SEC*, 96 F.3d 498, 500 (D.C. Cir. 1996) ("Once records are released, nothing in FOIA prevents the requester from disclosing the information to anyone else. The statute contains no provisions requiring confidentiality agreements or similar conditions.").

The ATF explicitly recognizes the risk of significant harm associated with the public disclosure of gun trace information. It has repeatedly "emphasize[d] that the appearance of a Federal firearms licensee (FFL) or a first unlicensed purchaser of record in association with a crime gun or in association with multiple crime guns in no way suggests that either the FFL or the first purchaser has committed criminal acts." *See, e.g.*, Bureau of Alcohol, Tobacco, Firearms and Explosives, *Crime Gun Trace Analysis Report: The Illegal Youth Firearms Market in Detroit* 17 (February 1999).

So too did Congress. As discussed *supra*, the Firearm Owners' Protection Act and the 2012 Tiahrt Rider heavily restrict the use and disclosure of information and documents produced by

7

FFLs to the ATF. One such restriction is that any information or document submitted by FFLs to the ATF "shall not be subject to subpoena or other discovery." 125 Stat. at 610.

**Fourth**, the ATF and Plaintiff do not adequately represent NSSF's interest in protecting the confidentiality of its members' sensitive information. The adequate representation "requirement of [Rule 24(a)] is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *accord Fund for Animals*, 322 F.3d at 735–36. And in the FOIA context, the D.C. Circuit has "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals*, 322 F.3d at 736. A plaintiff's interest lies in disclosure, the agency's interest lies in appropriately responding to the plaintiff's request, and the intervenor's interest lies in protecting its confidential information. *Appleton v. F.D.A.*, 310 F. Supp. 2d 194, 197 (D.D.C. 2004); *see also Fund for Animals*, 322 F.3d at 737 (explaining that "partial congruence of interests . . . does not guarantee the adequacy of representation"). NSSF has satisfied the inadequate representation requirement of Rule 24(a).

**II.   This Court should alternatively permit NSSF to intervene under Rule 24(b).**

In the alternative, this Court should permit NSSF to intervene under Rule 24(b), which allows the Court considerable discretion to permit anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). When determining whether to allow permissive intervention, courts "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *100Reporters*, 307 F.R.D. at 286 (quoting Fed. R. Civ. P. 24(b)(3)). All requirements for permissive intervention are met in this case.

8

First, as noted above, NSSF's motion is timely. *See, e.g.*, *Fund for Animals*, 322 F.3d at 735 (finding motion to intervene timely because it was filed "less than two months after the plaintiffs filed their complaint").

Second, NSSF's position that the Court should not order public disclosure of confidential and sensitive information share common questions of law and fact with both Plaintiff's claims and ATF's anticipated defenses. ATF has already denied Plaintiff's FOIA request on the ground that "the Tiahrt Rider prohibits disclosure of the information under Exemption 3 of FOIA." (*See* Doc. 1 at 4, ¶ 11). While NSSF agrees with ATF that Plaintiff is not entitled to the information sought in its FOIA request, NSSF's arguments against disclosure are not limited to Exemption 3 of FOIA or the Tiahrt Rider, including in addition and without limitation Exemption 4 as well. The basic overlap between NSSF's and ATF's positions about the propriety of Plaintiff's FOIA requests, however, is more than sufficient to meet Rule 24(b)'s commonality requirement. *See 100Reporters*, 307 F.R.D. at 286 (finding commonality requirement met where intervenor, a private party, and federal agency both opposed disclosure of information sought in Plaintiff's FOIA request). And NSSF's arguments and interest in preventing disclosure are different from those of ATF, militating towards allowing permissive intervention for NSSF.

Finally, intervention at this early stage will not cause undue delay or prejudice because ATF has not yet even answered the complaint and no other proceedings have occurred. *Atl. Refinishing & Restoration, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 272 F.R.D. 26, 29 (D.D.C. 2010) (finding that permissive intervention would not delay case or prejudice existing parties when motion to intervene filed before the scheduling of the initial status hearing).

9

## CONCLUSION

For the reasons above, NSSF respectfully requests that this Court grant its motion to intervene in this action.

Respectfully submitted this 23rd day of January 2024,

**BRADLEY ARANT BOULT CUMMINGS LLP**

*/s/ John Parker Sweeney*
John Parker Sweeney, Esq. (#914135)
James W. Porter, III, Esq. (#999070)
1615 L Street NW, Suite 1350
Washington, DC 20036
(202) 393-7150
jsweeney@bradley.com
jporter@bradley.com

ATTORNEYS OF RECORD FOR INTERVENOR
NATIONAL SHOOTING SPORTS FOUNDATION, INC.

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 23, 2024, I caused the foregoing to be filed via the Court's ECF filing system, which automatically served a copy to all counsel of record.

/s/ *John Parker Sweeney*