# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MAYOR AND CITY COUNCIL OF
BALTIMORE,

       *Plaintiff*,

v.

BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES,

       *Defendant*.

No. 1:23-cv-03762-RDM

## MEMORANDUM IN OPPOSITION TO THE NATIONAL SHOOTING SPORTS FOUNDATION, INC.'S MOTION TO INTERVENE

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

BACKGROUND ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 2

    I.    NSSF is not entitled to intervene as of right under Rule 24(a). ....................................... 3

      A.    NSSF lacks Article III standing. ........................................................................... 3

          1.    NSSF has not alleged an injury in fact........................................................ 3

          2.    NSSF has not identified a member who has standing................................ 7

      B.    NSSF does not meet the requirements for intervention of right. .................................. 9

          1.    NSSF has no interest in the crime gun information Baltimore requests. ................... 9

          2.    Disposition of this action will not impede NSSF's (non-existent) interest. .............. 9

          3.    Any interest asserted by NSSF is adequately represented by ATF. ........................ 10

    II.    NSSF fails to establish grounds for permissive intervention........................................... 11

    CONCLUSION........................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abulhawa v. Dep't of Treasury,*
No. 17-5158, 2018 WL 3446699 (D.C. Cir. June 19, 2018) ....................................................3

*Abulhawa v. U.S. Dep't of the Treasury,*
239 F. Supp. 3d 24 (D.D.C. 2017) ..................................................................................3

*Am. Chemistry Council v. Dep't of Transp.,*
468 F.3d 810 (D.C. Cir. 2006) ......................................................................................7

*Appleton v. Food & Drug Administration,*
310 F. Supp. 2d 194 (D.D.C. 2004) ..............................................................................11

*Arpaio v. Obama,*
797 F.3d 11 (D.C. Cir. 2015) .........................................................................................3

*Brady Ctr. to Prevent Gun Violence v. U.S. Dep't of Just.,*
410 F. Supp. 3d 225 (D.D.C. 2019) ..............................................................................10

*Chamber of Com. of U.S. v. E.P.A.,*
642 F.3d 192 (D.C. Cir. 2011) ......................................................................................8

*Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.,*
58 F.4th 1255 (D.C. Cir. 2023) ..........................................................................7, 10, 12

*Clapper v. Amnesty Int'l USA,*
568 U.S. 398 (2013).................................................................................................8, 9

*Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n,*
788 F.3d 312 (D.C. Cir. 2015) ......................................................................................9

*Ctr. for Investigative Reporting v. U.S. Dep't of Just.,*
14 F.4th 916 (9th Cir. 2021) ......................................................................................10

*Davis v. Federal Election Commission,*
554 U.S. 724 (2008)................................................................................................6, 7

*Defs of Wildlife v. Perciasepe,*
714 F.3d 1317 (D.C. Cir. 2013) ..................................................................................11

*Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec.,*
384 F. Supp. 2d 100 (D.D.C. 2005) ..............................................................................6

*Everytown for Gun Safety Support Fund v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 984 F.3d 30 (2d Cir. 2020) ..............................................................10

*FCC v. AT&T Inc.*, 562 U.S. 397 (2011) ...........................................................................................5

*Flyers Rts. Educ. Fund, Inc. v. Fed. Aviation Admin.*, 71 F.4th 1051 (D.C. Cir. 2023) .............................................................................12

*Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2356 (2019) ......................................................................................5, 6

*Friends of Earth v. Haaland*, No. 21-cv-2317, 2022 WL 136763 (D.D.C. Jan. 15, 2022) ......................................13

*Fund for Animals, Inc. v. Norton*, 322 F.3d 728 (D.C. Cir. 2003) ..............................................................................3, 9

*Hughes v. Abell*, No. 09-cv-220, 2014 WL 12787807 (D.D.C. Feb. 10, 2014) ...................................11

*Lindsay-Poland v. U.S. Dep't of Just.*, No. 22-cv-07663, 2023 WL 8810796 (N.D. Cal. Dec. 19, 2023) ...........................10

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) .............................................................................................3

*Pharm. Rsch. & Mfrs. of Am. v. Dep't of Health & Human Servs.*, 656 F. Supp. 3d 137 (D.D.C. 2023) ...............................................................8

*Pub. Citizen, Inc. v. Trump*, 297 F. Supp. 3d 6 (D.D.C. 2018) ..................................................................8

*Public Citizen Health Research Group v. FDA*, 185 F.3d 898 (D.C. Cir. 1999) ....................................................................6

*Sevier v. Lowenthal*, 302 F. Supp. 3d 312 (D.D.C. 2018) ...............................................................11

*Shteynlyuger v. Ctrs. for Medicare & Medicaid Servs.*, No. 20-cv-2982, 2023 WL 6389139 (D.D.C. Sept. 30, 2023) ................................7

*Sims v. CIA*, 642 F.2d 562 (D.C. Cir.1980) .......................................................................5

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ...........................................................................................3, 6

*Stellar IT Sols., Inc. v. U.S. Citizenship & Immigr. Servs.*,
No. 18-cv-2015, 2019 WL 3430746 (D.D.C. July 30, 2019) ..................................12

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009).................................................................................................8

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021).............................................................................................3, 6

*U.S. v. Bournes*,
No. 23-cr-74 (D.D.C. Oct. 5, 2023) ........................................................................5

*U.S. v. Minor*,
No. 22-mj-171 (D.D.C. July 29, 2022) ...................................................................5

*U.S. v. Oxner*,
No. 22-mj-35 (W.D. Va. June 6, 2022) ...................................................................5

**Statutes, Regulations, and Rules**

18 U.S.C. § 926(a)(3)...................................................................................................3

Consolidated and Further Continuing Appropriations Act, 2012, Pub. L. No. 112-
55, 125 Stat. 552 (2011)......................................................................................2, 4

Federal Rules of Civil Procedure:

Rule 24 ....................................................................................................................1

Rule 24(a)............................................................................................................2, 3

Rule 24(a)(2)..........................................................................................................9

Rule 24(b)..........................................................................................................2, 11

Rule 24(b)(1)(B) ...................................................................................................12

Rule 24(b)(3) .........................................................................................................12

21 C.F.R. § 20.55 ......................................................................................................11

**Miscellaneous**

Bureau of Alcohol, Tobacco, Firearms and Explosives, Firearms Trace Data:
Baltimore, MD - 2019, https://www.atf.gov/resource-center/firearms-trace-
data-baltimore-md-2019 .........................................................................................4

Bureau of Alcohol, Tobacco, Firearms and Explosives, National Firearms
     Commerce and Trafficking Assessment (NFCTA): Crime Guns - Volume
     Two, Part III: Crime Guns Recovered and Traced Within the Unites States
     and Its Territories (2023), https://www.atf.gov/firearms/docs/report/nfcta-
     volume-ii-part-iii-crime-guns-recovered-and-traced-us/download ..........................................4

Bureau of Alcohol, Tobacco, Firearms and Explosives, Firearms Trace Data-
     2022, https://www.atf.gov/resource-center/firearms-trace-data-2022 ....................................4

Create an Annual FOIA Report, FOIA.gov, https://www.foia.gov/data ......................................11

Plaintiff Mayor and City Council of Baltimore ("Baltimore") submits this brief in opposition to the National Shooting Sports Foundation, Inc.'s ("NSSF") Motion to Intervene. The motion should be denied. NSSF lacks Article III standing and fails to meet the requirements for either intervention of right or permissive intervention under Rule 24.

## BACKGROUND

On September 12, 2023, Baltimore submitted a Freedom of Information Act ("FOIA") Request to the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), seeking data from ATF's Firearms Tracing System ("FTS") database in order to identify gun crime trends in Baltimore. Compl., Ex. 1, ECF No. 1. Baltimore's Request has four parts.

Part 1 seeks records sufficient to identify the federally licensed firearms dealers ("FFLs") that are the top ten sources of crime guns recovered in Baltimore from 2018 through 2022. Part 1 also seeks information sufficient to identify the number of firearms recovered in Baltimore associated with each of the 10 FFLs ("crime guns"), how long it took for those guns to be recovered in crimes (the "time-to-crime"), and the types of crimes those guns were associated with, *e.g.* homicide or aggravated assault.

Part 2 calls for records sufficient to show the number of firearms recovered in Baltimore in connection with six specific circumstances (homicide, attempted homicide, aggravated assault, robbery, suicide, and attempted suicide), organized by time-to-crime, firearm type, and source state.

Parts 3 and 4 of the Request ask for the underlying data related to a recent ATF report on gun trafficking in Baltimore. Specifically, these parts seek "tables or spreadsheets" used to compile two tables in the report, which identify Baltimore as the "Top Source City" for guns recovered in Baltimore and "Top Recovery City" for guns sourced from Baltimore.

Critically for present purposes, no part of Baltimore's Request calls for: the identities of individual purchasers or other personally identifying information; FFL records of specific firearm acquisitions or dispositions; individual "trace requests" sent to FFLs; information about individual law enforcement investigations; or any financial or proprietary records belonging to individual FFLs.

ATF rejected Baltimore's FOIA Request in its totality on September 30, 2023, stating that FOIA Exemption 3 and the Tiahrt Rider[1] exempt the data requested by Baltimore from disclosure. Compl., Ex. 2, ECF No. 1. After the Office of Information Policy failed to respond to Baltimore's administrative appeal within 20 business days, Baltimore commenced this suit, seeking the production of records responsive to Baltimore's FOIA Request. NSSF moved to intervene on January 23, 2024.

## ARGUMENT

NSSF's motion fails on multiple grounds. First, NSSF flunks the test for Article III standing because it has identified neither a concrete injury-in-fact nor a specific NSSF member who would have standing. Second, NSSF fails to meet the requirements of intervention as of right under Rule 24(a) because it lacks an interest in the subject of the action, cannot show that granting Baltimore's FOIA Request would impede its (non-existent) interest, and certainly cannot reconcile its assertion of inadequate representation with the Government's long history of support for NSSF's preferred reading of the Tiahrt Rider. Last, NSSF does not warrant permissive intervention under Rule 24(b) because it does not share a defense with the Government and intervention would prejudice Baltimore.

---

[1] Consolidated and Further Continuing Appropriations Act, 2012, Pub. L. No. 112-55, 125 Stat. 552, 609–10 (2011).

I.      **NSSF is not entitled to intervene as of right under Rule 24(a).**

To intervene as of right under Rule 24(a), NSSF must demonstrate Article III standing, as well as the requirements of Rule 24(a) itself, which are (1) a timely motion, (2) an interest relating to the property or transaction that is the subject of the action, (3) that disposition of the action would impair NSSF's interest, and (4) that the existing parties do not adequately represent NSSF's interests. *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003).

A.      **NSSF lacks Article III standing.**

1.      **NSSF has not alleged an injury in fact.**

Standing requires a showing of injury in fact. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To establish injury in fact, the movant must demonstrate "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "No concrete harm, no standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021). "'[T]hreadbare recitals of the elements of [standing], supported by mere conclusory statements, [will] not suffice . . . .'" *Abulhawa v. U.S. Dep't of the Treasury*, 239 F. Supp. 3d 24, 31 (D.D.C. 2017) (Moss, J.) (quoting *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015)), *aff'd sub nom. Abulhawa v. Dep't of Treasury*, No. 17-5158, 2018 WL 3446699 (D.C. Cir. June 19, 2018).

In its brief, NSSF never tells the Court what *concrete harm* its members will suffer if the Court grants Baltimore's requested relief. Instead, NSSF's theory of standing is predicated on its *legal* theory that Congress—through 18 U.S.C. § 926(a)(3) and the Tiahrt Rider—has recognized "legally protectable privacy and/or proprietary interests in the sensitive and confidential information contained in the acquisition and disposition records." NSSF Br. at 3–4. It repeatedly refers to the requested information as "confidential" and declares that "[p]ublic disclosure of that

sensitive and confidential law enforcement information under the FOIA is a concrete and particularized harm," *id.*, but never how its members are injured by such disclosure.

Indeed, NSSF fails to allege injury-in-fact for two separate reasons.

First, the information that Baltimore requested is not confidential. While NSSF goes into great detail about the transaction forms that are completed by individual purchasers, *see* NSSF Br. at 2–3, Baltimore does not seek the records of individual firearm transactions, nor data sufficient to reconstruct individual firearm transactions or to connect any one gun to any particular crime.[2] Baltimore seeks information sufficient to demonstrate the number of guns recovered in its jurisdiction associated with certain crimes (Request Part II) and the top sources of crime guns for the city (Request Parts I, III & IV). While NSSF argues that it has an expectation of privacy in the records it sends to ATF, this is simply not true. ATF routinely publishes reports reflecting data derived from the information produced to ATF by individual FFLs ("trace data").[3] It even has an entire webpage dedicated to publicizing trace data reports which are "intended to provide the public with insight into firearms recoveries."[4] Contrary to the NSSF's incomplete citation to the Tiahrt Rider, *see* NSSF Br. at 4, this is explicitly contemplated and permitted by the Rider. *See* Pub. L. 112-55, 125 Stat. 552, 610 (providing that the Tiahrt Rider "shall not be construed to

---

[2] Baltimore "does not seek information that could reasonably be expected to interfere with law enforcement investigations nor does it seek information that would infringe on personal privacy." Compl. ¶ 42. To the extent that any personally identifying information or any information connecting a gun to a particular crime would be included in the documents produced pursuant to its FOIA Request, Baltimore fully expects that ATF would redact such information.

[3] *See, e.g.*, ATF, National Firearms Commerce and Trafficking Assessment (NFCTA): Crime Guns – Volume Two, Part III: Crime Guns Recovered and Traced Within the Unites States and Its Territories (2023), https://www.atf.gov/firearms/docs/report/nfcta-volume-ii-part-iii-crime-guns-recovered-and-traced-us/download; ATF, Firearms Trace Data: Baltimore, MD – 2019, https://www.atf.gov/resource-center/firearms-trace-data-baltimore-md-2019 (last reviewed May 17, 2022).

[4] Bureau of Alcohol, Tobacco, Firearms and Explosives, Firearms Trace Data-2022, https://www.atf.gov/resource-center/firearms-trace-data-2022 (last reviewed Oct. 11, 2023).

prevent . . . the publication of annual statistical reports on products regulated by the [ATF] . . . or statistical aggregate data regarding firearms traffickers and trafficking channels, or firearms misuse, felons, and trafficking investigations").

And to the extent that Baltimore's Request seeks the identities of FFLs that routinely sell crime guns, NSSF still has no expectation of privacy in those records, since that information is regularly made public in various court filings. *See, e.g.*, Government's Statement of Offense in Support of Defendant's Plea of Guilty, *U.S. v. Bournes*, No. 23-cr-74 (D.D.C. Oct. 5, 2023), ECF No. 42 (listing the make, model, and caliber of guns illegally purchased by defendants from named FFLs based in Georgia); Affidavit in Support of Criminal Complaint and Arrest Warrant, *U.S. v. Minor*, No. 22-mj-171 (D.D.C. July 29, 2022), ECF No. 1-1 (ATF special agent describing the make, model, and caliber of a handgun, date of retail sale and recovery, and the name of the source FFL in Maryland); Affidavit in Support of Criminal Complaint and Arrest Warrant at 4-8, *U.S. v. Oxner*, No. 22-mj-35 (W.D. Va. June 6, 2022), ECF No. 3-1 (ATF special agent detailing investigation into the recovery and source of a pistol used in a Washington, D.C., homicide, listing the purchases of firearms at named Virginia FFLs). Thus, far from expecting that the identities of FFLs that sell crime guns will be kept confidential, the reality is that FFLs know and expect that information will be used in public court filings. While NSSF relies on *Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2356 (2019) for the proposition that information is considered confidential when it is submitted to an agency with the assurance of privacy, *see* NSSF Br. at 4–5, there simply is no such assurance here.[5]

---

[5] While NSSF argues that "protectable privacy . . . interests" are at issue in this litigation, *see* NSSF Br. at 3, 7, its industry members cannot invoke Exemptions 6 and 7C for invasions of personal privacy because those exemptions apply only to the personal information of human individuals, not business information. *FCC v. AT&T Inc.*, 562 U.S. 397, 409–10 (2011) (Exemption 7C); *Sims*

Second, even if some of the information requested by Baltimore were confidential, NSSF's theory of injury ignores the central point of the *TransUnion* and *Spokeo* decisions by conflating legal interest with factual injury. As *TransUnion* makes clear, "Congress may enact legal prohibitions and obligations. And Congress may create causes of action for plaintiffs to sue defendants who violate those legal prohibitions or obligations." 594 U.S. at 427. But that is not sufficient for standing, because "injury in law is not an injury in fact." *Id.*

To be sure, an injury suffered because of information disclosure can provide the basis for standing.[6] In *Food Marketing Institute*, cited repeatedly in NSSF's brief, the Food Marketing Institute had standing and could intervene because the record showed that disclosure of store-level SNAP redemption data "would cause [FMI's] member retailers . . . some *financial* injury." 139 S. Ct. at 2362 (emphasis altered). Likewise, in *TransUnion* itself, those class members whose erroneous credit reports were shared with third parties had standing because "a person is injured when a defamatory statement that would subject him to hatred, contempt, or ridicule is published to a third party." *TransUnion*, 594 U.S. at 432 (internal quotation marks omitted). And in *Davis v. Federal Election Commission*, 554 U.S. 724 (2008), candidate Jack Davis had standing to challenge a disclosure requirement in the Bipartisan Campaign Reform Act of 2002, which required self-financing candidates to disclose at the outset of their candidacy if they expected to

_____

*v. CIA*, 642 F.2d 562, 572 n.47 (D.C. Cir.1980) (Exemption 6); *see also Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec.*, 384 F. Supp. 2d 100, 188 n.29 (D.D.C. 2005) (explaining "neither corporations nor business associations have privacy interests that can be protected under Exemption 6"). And, as Baltimore has made clear, it is not seeking any personally identifying information for individual customers.

[6] *Public Citizen Health Research Group v. FDA*, 185 F.3d 898 (D.C. Cir. 1999) did not hold, as NSSF claims, that a "submitter of documents to a government agency has a cognizable interest in maintaining the confidentiality of those documents." NSSF Br. at 3. It simply observed—without offering any analysis—that a corporation which had submitted drug applications to the FDA had intervened in the underlying FOIA case seeking such applications. *Pub. Citizen Health Rsch. Grp.*, 185 F.3d at 900.

spend more than a certain threshold in personal money. *Id.* at 730. But Davis was injured not because of disclosure qua disclosure, but because it subjected him to more onerous reporting requirements. *Id.* at 733 ("Davis faced the imminent threat that he would have to follow up on that disclosure with further notifications after he in fact passed the $350,000 mark.").

This case is nothing like that. While NSSF argues that public disclosure of "sensitive and confidential law enforcement information . . . is a concrete and particularized harm," NSSF Br. at 4, that would be an injury *to law enforcement* (that ATF is well positioned to vindicate), not to individual corporations. And though NSSF is correct that certain "commercial or financial information" cannot be disclosed under FOIA's Exemption 4, *see* NSSF Br. at 5, no such commercial or financial information is at issue here. *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 58 F.4th 1255, 1263, 1266–68 (D.C. Cir. 2023) [hereinafter "*CREW*"] (information withheld under Exemption 4 must serve a commercial function or purposes); *Shteynlyuger v. Ctrs. for Medicare & Medicaid Servs.*, No. 20-cv-2982, 2023 WL 6389139, at *19 (D.D.C. Sept. 30, 2023) (Moss, J.) (explaining that "'Exemption 4 paradigmatically applies to records that a business owner customarily keeps private because they actually reveal basic commercial operations, such as sales statistics, profits and losses, and inventories, or [that] relate to the income-producing aspects of a business' or to information in which the submitter has a 'commercial interest'") (quoting *CREW*, 58 F.4th at 1262; citations omitted). Thus, NSSF has entirely failed to demonstrate that its members will suffer a concrete harm from the disclosed data.

## 2. NSSF has not identified a member who has standing.

NSSF lacks associational standing to sue on behalf of its members because it has not identified any member who would have standing to intervene.

"Where an organization alleges associational standing, it must show that at least one member has standing to pursue its challenge." *Am. Chemistry Council v. Dep't of Transp.*, 468

F.3d 810, 818 (D.C. Cir. 2006) (cleaned up); *see also Pub. Citizen, Inc. v. Trump*, 297 F. Supp. 3d 6, 18 (D.D.C. 2018). "It is not enough to aver that unidentified members have been injured[,]" *Chamber of Com. of U.S. v. E.P.A.*, 642 F.3d 192, 199 (D.C. Cir. 2011), which is what NSSF has done here. The organization "must specifically identify members who have suffered the requisite harm." *Id.* (internal quotation marks omitted).

Here, the *only* information at issue is crime guns that are recovered in or sourced from the City of Baltimore. FFLs may be identified in response to Part 1, which asks for the top ten sources of guns recovered from Baltimore crime scenes between 2018 to 2022, or Parts 3 or 4 which seek "tables and spreadsheets" pertaining to tables in a report identifying Baltimore as the top source city for crime guns recovered in Baltimore and the top recovery cities for guns sourced from Baltimore.

But to establish standing, NSSF needs a reasonable basis to conclude that the specifically identified member would likely be included in response to the above requests and would suffer a concrete injury. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410–14 (2013) (actual knowledge about the likelihood of being identified required for standing); *see also Pharm. Rsch. & Mfrs. of Am. v. Dep't of Health & Human Servs.*, 656 F. Supp. 3d 137, 153 (D.D.C. 2023) (explaining that "associational plaintiffs cannot rest on the 'statistical probability' that some of their members will suffer harm") (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009)). But NSSF has not even attempted to identify an FFL that simply sells guns in or around Baltimore. Instead, in conclusory fashion, it argues that any NSSF member "whose information was disclosed to the ATF would have standing to challenge the FOIA request[ ]." NSSF Br. at 5.[7]

---

[7] In its brief, NSSF alludes to the possibility that NSSF members could suffer reputational harm, NSSF Br. at 7, without ever making the actual argument. And for good reason, as any allegation

**B.      NSSF does not meet the requirements for intervention of right.**

NSSF's motion should be denied for the independent reason that it fails to meet the requirements of Rule 24(a)(2). That is because NSSF has no interest in the property or transaction that is the subject of the action; disposition of the action would not impair its interest (if it had one); and the Government provides adequate representation. *See Fund for Animals*, 322 F.3d at 731.

**1.   NSSF has no interest in the crime gun information Baltimore requests.**

Because NSSF lacks Article III standing, it therefore also lacks "an interest relating to the property or transaction that is the subject of the action." Fed. R. Civ. P 24(a)(2); *Fund for Animals*, 322 F.3d at 735; *Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 320 (D.C. Cir. 2015) (tests for Article III standing and "interest" under Rule 24(a)(2) are the "same").

**2.   Disposition of this action will not impede NSSF's (non-existent) interest.**

Even assuming *arguendo* that FFLs' acquisition and disposition records are sensitive and confidential, and that NSSF has an interest in preventing their disclosure, Baltimore's Request does not seek them, and thus this action does not threaten to impede that interest.

Baltimore's FOIA Request asks for basic statistical information about crime guns recovered in Baltimore. Part 1 asks for data about the top ten FFL sources of recovered crime guns in Baltimore, the number of firearms recovered in Baltimore annually associated with those FFLs, as well as the types of crimes for which guns were recovered, and the time-to-crime of those

---

of reputational harm would be entirely speculative and dependent on intervening factors, including the supposition that any one FFL is responsible for a large or disproportionate number of recovered crime guns in Baltimore, or that publication of any such information would influence the FFL's customer base. *See Clapper*, 568 U.S. at 413–14 ("We decline to abandon our usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors.").

recovered guns. Part 2 asks for general statistical information about firearm recoveries in Baltimore. And Parts 3 and 4 ask for underlying data for reports that ATF already published.

In no part of Baltimore's Request does it ask for the actual trace summaries produced after a successful trace, personally identifiable information of individual purchasers, or FFL records of specific firearm acquisitions or dispositions. Nor does the Request ask for information about pricing, revenue, sales volume, market research, strategy, or any "commercial or financial information" that are within the ambit of FOIA Exemption 4. *CREW*, 58 F.4th at 1263, 1266–68 (information withheld under Exemption 4 must serve a commercial function or purposes). Here, FFLs catalogue information on ATF Form 4473 not to serve the commercial ends of their business, but to meet the requirements of the Gun Control Act in service of federal criminal law. At bottom, the records in which NSSF claims a privacy interest for its members are not responsive to Baltimore's Request.

### 3. Any interest asserted by NSSF is adequately represented by ATF.

Intervention of right should be denied on the additional ground that the defendant here adequately protects any interest NSSF may claim.

In the real world, the Government has consistently adopted and defended NSSF's preferred reading of the Tiahrt Rider, taking the view that that the Tiahrt Rider prohibits disclosure of information from the FTS database under FOIA. This vigorous opposition has involved numerous court cases across the country. *See, e.g.*, *Ctr. for Investigative Reporting v. U.S. Dep't of Just.*, 14 F.4th 916 (9th Cir. 2021); *Everytown for Gun Safety Support Fund v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 984 F.3d 30 (2d Cir. 2020); *Lindsay-Poland v. U.S. Dep't of Just.*, No. 22-cv-07663-EMC, 2023 WL 8810796 (N.D. Cal. Dec. 19, 2023); *Brady Ctr. to Prevent Gun Violence v. U.S. Dep't of Just.*, 410 F. Supp. 3d 225 (D.D.C. 2019) (Moss, J.). Outside the

courtroom, the Government has pressed its opposition to disclosure through the denial of more than 1,000 trace-related FOIA requests to ATF between 2016 and 2022.[8]

NSSF cites *Appleton v. Food & Drug Administration*, 310 F. Supp. 2d 194 (D.D.C. 2004), to support its proposition that an "agency's interest lies in appropriately responding to the plaintiff's request, and the intervenor's interest lies in protecting its confidential information." NSSF Br. at 8. Yet *Appleton* provides a stark and helpful contrast. In *Appleton*, the court emphasized an FDA rule providing that if the agency denied a FOIA request implicating a person's confidential commercial information, the FDA would notify the submitter and "require" them to intervene to defend the exempt status of their records. *Appleton*, 310 F. Supp. 2d at 197 (citing 21 C.F.R. § 20.55). If the affected person failed to intervene, the FDA would "take this failure into consideration in deciding whether that person has waived such exemption[.]" 21 C.F.R. § 20.55. That bears no resemblance to this case, where ATF has never wavered in its defense of NSSF's view of the Tiahrt Rider.

## II.     NSSF fails to establish grounds for permissive intervention.

The Court should deny NSSF's motion for permissive intervention under Rule 24(b).

First, at least one court in this district has held that "permissive intervenors must demonstrate standing." *Hughes v. Abell*, No. 09-cv-220, 2014 WL 12787807, at *5 (D.D.C. Feb. 10, 2014).[9]   As explained in Part I, NSSF does not have standing. NSSF is just an organization with a particular view about the legal merits of Baltimore's lawsuit—that does not give it license to participate.

---

[8] *See* Create an Annual FOIA Report, FOIA.gov, https://www.foia.gov/data.html (last visited Jan. 28, 2024) (Component: ATF; Data Type: Exemption 3 Statutes; Fiscal Years 2016–2022).

[9] "'It remains . . . an open question in [the D.C.] Circuit whether Article III standing is required for permissive intervention.'" *Sevier v. Lowenthal*, 302 F. Supp. 3d 312, 323 (D.D.C. 2018) (Moss, J.) (quoting *Defs of Wildlife v. Perciasepe*, 714 F.3d 1317, 1327 (D.C. Cir. 2013)).

Second, Rule 24(b)(1)(B) allows permissive intervention to anyone "who . . . *has a claim or defense* that shares with the main action a common question of law or fact." (emphasis added). But NSSF has failed to identify any such defense. While NSSF repeatedly invokes Exemption 4, there are plainly no commercial documents at issue in this litigation. *CREW*, 58 F.4th at 1265 ("We have read Exemption 4 to cover only information that, in and of itself, demonstrably pertains to the exchange of goods or services or the making of a profit."); *see also Flyers Rts. Educ. Fund, Inc. v. Fed. Aviation Admin.*, 71 F.4th 1051, 1057 (D.C. Cir. 2023) (explaining that Exemption 4 is "inapplicable" where "an agency's analysis or reformulation of confidential commercial information" does not reveal the underlying confidential commercial information). NSSF cannot manufacture a basis for intervention by making this case about something it's not.

Finally, NSSF's intervention would unduly prejudice Baltimore. Fed. R. Civ. P. 24(b)(3). NSSF's brief makes clear that it intends to use this case to obtain broader rulings about the status of FFL documents that are not at issue in this litigation. While there may be a time and place for such a dispute, this is not that case. *Stellar IT Sols., Inc. v. U.S. Citizenship & Immigr. Servs.*, No. 18-cv-2015, 2019 WL 3430746, at *3 (D.D.C. July 30, 2019) (explaining in the context of Fed. R. Civ. P. 24(b)(3) that "a court can deny a motion for permissive intervention – even if there is a common question of law o[r] fact – if intervention would cause undue delay, complexity, or confusion in a case."). Baltimore simply wants to obtain documents that will help it analyze crime gun trends in its jurisdiction so that it can take steps to address the epidemic of gun violence within its borders. Delaying and muddying that goal by injecting unrelated issues into this litigation unduly prejudices Baltimore.

Per this Court's January 30, 2024 order, Baltimore intends to confer with the Government over substantive areas of disagreement and hopes to agree to a schedule for efficient resolution of

12

this case. NSSF's participation, because it has no concrete interest and moves to intervene on philosophic grounds, serves only to ratchet up costs and delay proceedings.

In light of the fact that NSSF has no standing and no basis to intervene, Baltimore suggests that it would be more appropriate for NSSF to participate as an *amici*. *See Friends of Earth v. Haaland*, No. 21-cv-2317, 2022 WL 136763, at *6 (D.D.C. Jan. 15, 2022) ("Other courts in this district have allowed would-be intervenors to participate as amici if they did not satisfy the requirements for intervention but otherwise offered input that could benefit the Court.") (citing cases).

## CONCLUSION

The Court should deny NSSF's Motion to Intervene.

Respectfully submitted,

/s/ Gary A. Orseck

Ebony M. Thompson**          Gary A. Orseck (D.C. Bar # 433788)

Ebony M. Thompson**
City Solicitor
Sara Gross**
Chief, Affirmative Litigation Division
Thomas P.G. Webb**
Chief Solicitor
BALTIMORE CITY
    DEPARTMENT OF LAW
City Hall
100 North Holiday Street, Suite 109
Baltimore, Maryland 21202
Tel: (410) 396-3947
Fax: (410) 574-1025
Ebony.Thompson@baltimorecity.gov

Gary A. Orseck (D.C. Bar # 433788)
Paul Brzyski* (D.C. Bar # 1723545)
KRAMER LEVIN NAFTALIS & FRANKEL LLP
2000 K Street NW, 4th Floor
Washington, DC 20006
Tel: (202) 775-4500
Fax: (202) 775-4510
gorseck@kramerlevin.com

Alla Lefkowitz* (D.C. Bar # 1048271)
EVERYTOWN LAW
P.O. Box 14780
Washington, DC 20044
Tel: (202) 545-3257
alefkowitz@everytown.org

Aaron Esty*
Mollie Krent*
EVERYTOWN LAW
450 Lexington Avenue, P.O. Box 4184
New York, NY 10017
Tel: (646) 324-8369
aesty@everytown.org
mkrent@everytown.org

** *Pro hac vice application pending*    * *Admitted pro hac vice*

Dated: February 14, 2024