**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **MAYOR AND CITY COUNCIL OF BALTIMORE,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Case No. 1:23-cv-03762-RDM** |
| **BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES,** | ) ) ) | |
| **Defendant.** | ) ) | |

---

## BRIEF OF AMICUS CURIAE NATIONAL SHOOTING SPORTS FOUNDATION, INC. IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

National Shooting Sports Foundation, Inc. submits this brief as Amicus Curiae setting forth its arguments on the merits in support of Defendant Bureau of Alcohol, Tobacco, Firearms and Explosive's motion for summary judgment as permitted by this Court's minute order of March 4, 2024.

Respectfully submitted this 19th day of April 2024,

*/s/John Parker Sweeney*
John Parker Sweeney, Esq. (#914135)
James W. Porter, III, Esq. (#999070)
1615 L Street NW, Suite 1350
Washington, DC 20036
(202) 393-7150
jsweeney@bradley.com
jporter@bradley.com

ATTORNEYS FOR AMICUS CURIAE
NATIONAL SHOOTING SPORTS FOUNDATION, INC.

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ...................................................................................... ii

INTERESTS OF AMICUS CURIAE ......................................................................... 1

BACKGROUND ........................................................................................................ 2

    A.    Baltimore's FOIA requests seek confidential firearm trace data. ............................ 2

    B.    NSSF's member FFLs provide ATF the confidential firearm trace data Baltimore requests. ............................................................................................... 3

    C.    ATF properly denied Baltimore's FOIA requests. ................................................. 4

ARGUMENT ............................................................................................................. 4

    A.    The Tiahrt Amendment requires ATF to withhold firearm trace data under FOIA Exemption 3 .................................................................................................. 4

        i.    The Tiahrt Amendment is an exemption statute under FOIA ..................... 5

                a.    The lack of an express reference to Exemption 3 has no bearing on whether the Tiahrt Amendment is an exemption statute. ......................................................................................... 7

                b.    All other textual and contextual evidence confirms that the Tiahrt Amendment is an exemption statute for purposes of FOIA Exemption 3 .................................................................... 9

        ii.    Baltimore's FOIA requests seek information covered by the Tiahrt Amendment. ............................................................................................... 12

    B.    ATF's withholding decision is consistent with the commercial and personal privacy interests protected by FOIA Exemptions 4, 6, and 7(C) and with the absence of any relevant public interest furthered by disclosure. ......................... 13

        i.    Prohibiting disclosure of ATF trace data protects legitimate privacy interests. ................................................................................................... 14

        ii.    There is no substantial public interest served by disclosure. ................... 18

    C.    Practical considerations emphatically support ATF's withholding decision........ 19

CONCLUSION ........................................................................................................ 22

CERTIFICATE OF SERVICE .............................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdeljabbar v. ATF*,
74 F. Supp. 3d 158 (D.D.C. 2014) ....................................................................................7

*Am. Airlines, Inc. v. Nat'l Mediation Bd.*,
588 F.2d 863 (2d Cir. 1978) ..........................................................................................14

*Ass'n of Retired R.R. Workers v. U.S. R.R. Ret. Bd.*,
830 F.2d 331 (D.C. Cir. 1987) .......................................................................................13

*Beck v. Dep't of Just.*,
997 F.2d 1489 (D.C. Cir. 1993) .................................................................................18, 19

*Brady Ctr. v. Dep't of Just.*,
410 F. Supp. 3d 225 (D.D.C. 2019) (Moss, J.) ...........................................................7, 20

*City of Chicago v. U.S. Dep't of Treasury (Chicago II)*,
384 F.3d 429 (7th Cir. 2004) ...........................................................................................8

*City of Chicago v. U.S. Dep't of Treasury (City of Chicago III)*,
423 F.3d 777 (7th Cir. 2005) ...............................................................................6, 11, 20

*Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*,
447 U.S. 102 (1980) .........................................................................................................5

*Corley v. United States*,
556 U.S. 303 (2009) .......................................................................................................11

*Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*,
244 F.3d 144 (D.C. Cir. 2001) .......................................................................................15

*Ctr. for Investigative Reporting v. U.S. Dep't of Just.*,
14 F.4th 916 (9th Cir. 2021) ..........................................................................................20

*D. Ginsberg & Sons v. Popkin*,
285 U.S. 204 (1932) .......................................................................................................10

*Dep't of Just. v. Reporters Comm. for Freedom of the Press*,
489 U.S. 749 (1989) .......................................................................................................14

*Dorsey v. United States*,
567 U.S. 260 (2012) .......................................................................................................11

*Everytown for Gun Safety Support Fund v. ATF,*
    984 F.3d 30 (2d Cir. 2020) .................................................................................... *passim*

*Food Mktg. Inst. v. Argus Leader Media,*
    588 U.S. 427 (2019) ................................................................................. 13, 14, 16

*Fowlkes v. ATF,*
    139 F. Supp. 3d 287 (D.D.C. 2015) ................................................................... 7

*Gov't Accountability Project v. U.S. Dep't of State,*
    699 F. Supp. 2d 97 (D.D.C. 2010) .................................................................. 14

*Lahr v. NTSB,*
    569 F.3d 964 (9th Cir. 2009) ........................................................................... 17

*Lepelletier v. Fed. Deposit Ins. Corp.,*
    164 F.3d 37 (D.C. Cir. 1999) ............................................................... 13, 14, 17, 18

*Lindsay-Poland v. U.S. Dep't of Just.,*
    No. 22-cv-07663-EMC, 2023 WL 8810796 (N.D. Cal. Dec. 19, 2023) ................................ 20

*Marcello v. Bonds,*
    349 U.S. 302 (1955) ........................................................................................... 7

*Mays v. Drug Enf't Admin.,*
    234 F.3d 1324 (D.C. Cir. 2000) ................................................................... 18, 19

*Nat'l Ass'n of Home Builders v. Norton,*
    309 F.3d 26 (D.C. Cir. 2002) .......................................................................... 16

*Nat'l Ass'n of Retired Fed. Emps. v. Horner,*
    879 F.2d 873 (D.C. Cir. 1989) ........................................................................ 16

*Pub. Citizen Health Rsch. Grp. v. Food & Drug Admin.,*
    704 F.2d 1280 (D.C. Cir. 1983) ...................................................................... 14

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank,*
    566 U.S. 639 (2012) ........................................................................................... 9

*Reep v. Dep't of Just.,*
    302 F. Supp. 3d 174 (D.D.C. 2018) ................................................................ 6, 7

*TransUnion, LLC v. Ramirez,*
    594 U.S. 413 (2021) ................................................................................... 17, 21

*United States v. Gonzales,*
    520 U.S. 1 (1997) ............................................................................................ 10

*Wilner v. Nat'l Sec. Agency*,
   592 F.3d 60 (2d Cir. 2009)..................................................................................5

**Statutes**

5 U.S.C. § 552................................................................................................................1, 8

5 U.S.C. § 552(b)(3) ....................................................................................................5, 6, 7

5 U.S.C. § 552(b)(3)(A)(1)–(2)..........................................................................................5

5 U.S.C. § 552(b)(3)(B)............................................................................................6, 7, 8, 9

5 U.S.C. § 552(b)(6) ....................................................................................................14, 16

5 U.S.C. § 552(b)(7)(C) ....................................................................................................14

18 U.S.C. § 923(g) ....................................................................................................6, 7, 12

18 U.S.C. § 923(g)(1)(A) ....................................................................................................16

Consolidated Appropriations Resolution, 2003, Pub. L. No. 108-7 (2003) ...................8

Consolidated Appropriations Act, 2005, Pub. L. No. 108-447 (2004).........................8

Omnibus Appropriations Act, 2009, Pub. L. No. 111-8 (2009) .................................8

Consolidated and Further Continuing Appropriations Act, 2012, Pub. L. No. 112-
   55 (2011)................................................................................................. *passim*

**Other Authorities**

27 C.F.R. § 478.125(e)....................................................................................................16

Bureau of Alcohol, Tobacco, Firearms and Explosives, *Fact Sheet: National
   Tracing Center* 1 (2011) .........................................................................................15

*Crime Gun Trace Analysis Report: The Illegal Youth Firearms Market in Detroit*
   17 (February 1999) .........................................................................................15

Office of Management and Budget, OMB No. 1140-0020, Firearms Transaction
   Record (revised August 2023) ................................................................................17

## INTRODUCTION

Amicus Curiae National Shooting Sports Foundation, Inc. submits this brief in support of Defendant Bureau of Alcohol, Tobacco, Firearms & Explosive's motion for summary judgment on Plaintiff Mayor and City Council of Baltimore's claim for public disclosure of ATF records under the Freedom of Information Act. Baltimore seeks the release of four broad categories of documents related to confidential firearm trace data that NSSF member federal firearms licensees are required to obtain, maintain, and provide to ATF on demand. ATF properly denied Baltimore's request under FOIA Exemption 3 because a statute commonly referred to as the "Tiahrt Amendment" forbids any public disclosure of firearm trace data. ATF is required by law to withhold these records from public disclosure under FOIA and this Court should grant summary judgment to ATF.

## INTERESTS OF AMICUS CURIAE

NSSF is the national trade association for the firearm, ammunition, hunting, and shooting sports industry. Formed in 1961, NSSF is a 501(c)(6) tax-exempt Connecticut non-profit trade association. NSSF's membership includes over 10,500 federally licensed firearms manufacturers, distributors, and retailers; companies manufacturing, distributing, and selling shooting and hunting related goods and services; sportsmen's organizations; public and private shooting ranges; firearms clubs; and industry media.

NSSF's mission is to promote, protect, and preserve hunting and the shooting sports by providing trusted leadership in addressing industry challenges; advancing participation in and understanding of hunting and shooting sports; reaffirming and strengthening its members' commitment to the safe and responsible sale and use of their products; and promoting a political environment that is supportive of America's hunting and shooting heritage and Second Amendment freedoms.

NSSF's interests in this case derive principally from the fact its member FFLs engage in lawful and regulated commerce in firearms throughout the United States, including in Baltimore County, Maryland and other areas near Baltimore City. Also included among NSSF's members are FFLs whose principal places of business are located outside Baltimore City and the surrounding areas but still regularly conduct firearms transactions with Baltimore City and other Maryland residents. Those FFLs are legally eligible under state and federal laws to acquire, possess, purchase, repair, sell, supply, and/or transfer to others firearms, firearm attachments, and/or firearm parts, and they do so, conducting regular firearms transfers with Baltimore City and other Maryland residents, residents of states bordering Maryland, and others. (Doc. 26-2 at 2, ¶ 7.)

The firearm trace data and related information Baltimore seeks in its FOIA requests will likely come from one or more NSSF member FFLs, and it will be the reputations and businesses of NSSF's members and their customers that will be harmed by that improper disclosure.

NSSF certifies that no party's counsel authored this amicus brief, in whole or in part; that no party or party's counsel contributed money to the preparation or submission of this amicus brief; and that no person—other than NSSF, its members, or its counsel—contributed money to the preparation or submission of this amicus brief.

## BACKGROUND

### A.  Baltimore's FOIA requests seek confidential firearm trace data.

Baltimore's first FOIA request seeks records sufficient to identify the FFLs comprising the top ten sources of firearms recovered in Baltimore from 2018 through 2022, as well as specific information about those firearms, including the time-to-crime of those firearms and the circumstances under which each firearm was recovered. (Compl. Ex. 1, Doc. 1-1 at 2.) The second request seeks information about the sources of firearms recovered in Baltimore between 2018 and 2022 in connection with homicide, attempted homicide, aggravated assault, robbery, suicide, and

attempted suicide. (*Id.* at 3.) The third and fourth requests seek all underlying data that were used to compile two charts published in a trace-data report produced by ATF earlier this year on crime guns recovered in Baltimore between 2017 and 2021. (*Id.*)

## B. NSSF's member FFLs provide ATF the confidential firearm trace data Baltimore requests.

NSSF's member FFLs keep the acquisition and disposition records of firearm transactions "strictly confidential" and "have never publicized any of th[at] information to any third party other than law enforcement when required to by law." (*See, e.g.*, Doc. 25-1 at 2, ¶ 8; Doc. 25-2 at 2, ¶ 8; Doc. 25-3 at 2, ¶ 8; Doc. 26-2 at 4–5, ¶ 18.) NSSF's member FFLs submit trace data to ATF under the Tiahrt Amendment's unequivocal assurance that ATF will maintain the confidentiality of any submitted information. *See* Consolidated and Further Continuing Appropriations Act, 2012, Pub. L. No. 112-55, 125 Stat. 552, 610 (2011) ("[N]o person or entity . . . shall knowingly and publicly disclose such data."). (*See also* Doc. 23-1 at 5, ¶ 11 ("Tracing requests are very sensitive and are handled in strictest confidence because of a purchaser's or individual's personally identifiable information[.]").)

Public disclosure of the trace data Baltimore seeks would harm the reputational interests of NSSF's member FFLs—regardless of whether a particular FFL has any connection to the trace at issue—by stigmatizing FFLs generally as facilitators of illegal firearms trafficking and firearms crimes. That reputational harm, in turn, harms NSSF's member FFLs' economic interests in the form of decreased sales; increased costs associated with an increased risk of litigation by private plaintiffs and/or state or local governments; and increased costs associated with increased regulatory scrutiny.

**C.  ATF properly denied Baltimore's FOIA requests.**

ATF denied Baltimore's FOIA requests on September 30, 2023. (Compl. Ex. 2, Doc. 1-2.) In its response to Baltimore, ATF explained that Baltimore requested information that ATF is required to maintain under the Gun Control Act and is exempt from disclosure under FOIA's Exemption 3 and the Tiahrt Amendment. (*Id.*) Baltimore sued ATF, alleging it had wrongfully withheld non-exempt responsive agency records in violation of FOIA. (Doc. 1 at 14, ¶ 55.) NSSF timely moved to intervene. (Doc. 11.) Baltimore opposed. (Doc. 17.) ATF took no position on NSSF's intervention. (Doc. 17 at 1.) The Court denied NSSF's initial motion to intervene. (*See* March 4, 2024 Minute Order.) The Court found that it could not "on the present record, assess the nature of the alleged injury that NSSF invokes in support of its derivative standing" and "as the record now stands, the Court cannot determine whether disclosure of the records sought in this case would injure an NSSF member and, if so, how that member would be injured." (*Id.*) The Court did, however, permit NSSF to participate as an amicus, inviting it to submit a brief in support by April 21, 2024.[1] (*Id.*)

**ARGUMENT**

**A.  <u>The Tiahrt Amendment requires ATF to withhold firearm trace data under FOIA Exemption 3.</u>**

ATF properly denied Baltimore's requests under FOIA Exemption 3, which exempts from disclosure records that are:

> specifically exempted from disclosure by statute . . . if that statute — (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers

---

[1] NSSF filed a renewed motion to intervene that supplemented the record with member declarations and a member survey (doc. 26), which Baltimore opposed (doc. 31). Again, ATF took no position. (*See* Doc. 26 at 2.) That motion is fully briefed and pending action by the Court. In filing this amicus brief, NSSF is not waiving its right to intervene to more adequately protect its and its members' interests here.

to particular types of matters to be withheld; and (B) if enacted after the date of enactment of the Open FOIA Act of 2009, specifically cites to this paragraph.

5 U.S.C. § 552(b)(3). To uphold an agency's withholding decision under Exemption 3, a court need only determine: (1) that the claimed statute is an exemption statute under FOIA; and (2) that the withheld material falls within that statute's scope. *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 72 (2d Cir. 2009).

ATF's invocation of Exemption 3 is proper because the Tiahrt Amendment is an exemption statute under FOIA, and the Tiahrt Amendment prohibits ATF from disclosing the information Baltimore seeks under FOIA. ATF is entitled to summary judgment.

### i.     *The Tiahrt Amendment is an exemption statute under FOIA.*

To qualify as an exemption statute under FOIA Exemption 3, the Tiahrt Amendment must either require withholding "in such a manner as to leave no discretion" or "refer[] to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3)(A)(1)–(2). The text of the Tiahrt Amendment explicitly does both.

Courts interpreting a statute begin with the text, and if that text is clear, it must "be regarded as conclusive." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980). The text of the current and applicable Tiahrt Amendment demonstrates a clear congressional command prohibiting any public disclosure of firearm trace data: "during the current fiscal year and in **each fiscal year thereafter**, **no funds** appropriated under this or any other Act may be used to disclose **part or all** of the contents of the Firearms Trace System database"; "no person or entity . . . **shall** knowingly and publicly disclose such data"; and "**all** such data **shall** be immune from legal process." 125 Stat. at 609–10 (emphases added). The emphasized text above demonstrates the breadth of the Tiahrt Amendment's disclosure prohibitions, the continuing nature of those prohibitions, and that they are mandatory. Accordingly, courts have consistently held that the

5

Tiahrt Amendment leaves ATF with no discretion—it is forbidden from publicly disclosing firearm trace information under FOIA or otherwise. *See, e.g.*, *Everytown for Gun Safety Support Fund v. ATF*, 984 F.3d 30, 39 (2d Cir. 2020) ("[O]rdinary interpretive considerations . . . clearly indicate that the plain import or fair implication of the 2012 Tiahrt Rider is to exempt FTS data from FOIA disclosure."); *see also City of Chicago v. U.S. Dep't of Treasury (City of Chicago III)*, 423 F.3d 777, 781 (7th Cir. 2005) ("[T]he 2005 [Appropriations] Act amounts to a change in substantive FOIA law in that it exempts from disclosure [trace] data previously available to the public under FOIA."); *Reep v. Dep't of Just.*, 302 F. Supp. 3d 174, 183 (D.D.C. 2018) ("The appropriations bill leaves the ATF with no discretion. And courts have previously held that Exemption 3 protects ATF firearms trace data.").

The Tiahrt Amendment also details, with specificity, the "particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). Congress could not have been more specific about what types of records should be withheld: "[T]he contents of the Firearms Trace System database maintained by the National Trace Center of [ATF] or any information required to be kept by licensees pursuant to section 923(g) of title 18, United States Code, or required to be reported pursuant to paragraphs (3) and (7) of such section . . . ." *See City of Chicago III*, 423 F.3d at 780–82 (describing Congress's words as "unmistakable" and conveying an "obvious" intent to bar disclosure of trace data).

The Tiahrt Amendment is an exemption statute for purposes of FOIA and prohibits public disclosure of firearm trace information, including the information Baltimore's FOIA requests seek.

### a. *The lack of an express reference to Exemption 3 has no bearing on whether the Tiahrt Amendment is an exemption statute.*

That conclusion is not changed by the Tiahrt Amendment's lack of an express reference to Exemption 3. While FOIA does provide that legislation enacted after 2009 should cite to § 552(b)(3)(B) to qualify as an exemption statute, the Supreme Court has long acknowledged that

Congress can and routinely does impliedly exempt later-enacted statutes from opt-out requirements provided for in earlier-enacted ones. *See Marcello v. Bonds*, 349 U.S. 302, 309–10 (1955) (holding that Immigration and Nationality Act impliedly exempted deportation hearings from the procedures of the Administrative Procedure Act despite the APA's express-exemption requirement); *see also Everytown*, 984 F.3d at 39–41 (holding that Congress impliedly exempted the Tiahrt Amendment from § 552(b)(3)(B)'s specific-citation requirement). A later-enacted statute that clearly expresses Congress's intent must be given effect even if it lacks the express reference that an earlier-enacted statute purports to impose on it. *Marcello*, 349 U.S. at 310.

Applying that mandate here, and as courts including this Court have consistently held, the unmistakable import of the Tiahrt Amendment is that it bars FOIA disclosure of information FFLs are required to produce to ATF, including firearm trace data, and Congress's choice not to use specific words referring to Exemption 3 does nothing to dilute the legal effect of the words it did use. *See, e.g.*, *Brady Ctr. v. Dep't of Just.*, 410 F. Supp. 3d 225, 241 (D.D.C. 2019) (Moss, J.) ("The text of the Tiahrt Rider is clear: it prohibits the expenditure of appropriated funds 'to disclose . . . any information required to be kept by licensees pursuant to [§ 923(g)] or required to be reported pursuant to paragraphs (3) and (6) of such section.'" (alteration in original)); *Reep*, 302 F. Supp. 3d at 183; *Fowlkes v. ATF*, 139 F. Supp. 3d 287, 291–92 (D.D.C. 2015) (collecting cases); *Abdeljabbar v. ATF*, 74 F. Supp. 3d 158, 174–76 (D.D.C. 2014).

The United States Court of Appeals for the Second Circuit recently addressed the issue in depth in its *Everytown* decision, holding that the Tiahrt Amendment is an exemption statute for purposes of FOIA Exemption 3 despite the Amendment's lack of a specific citation to § 552(b)(3)(B). 984 F.3d at 42. The court first noted the breadth of the anti-disclosure language of the original Tiahrt Amendment, which pre-dated FOIA's 2009 enactment *Id.* at 35–36. The

original Tiahrt Amendment (enacted in 2003) provided that except in very limited circumstances, "[n]o funds appropriated . . . shall be available to take any action based upon any provision of 5 U.S.C. § 552 with respect to" trace data. Consolidated Appropriations Resolution, 2003, Pub. L. No. 108-7, 117 Stat. 11, 473–74 (2003).

Despite the clear reference to FOIA in the 2003 Tiahrt Amendment, the Seventh Circuit held in *City of Chicago v. U.S. Dep't of Treasury (Chicago II)*, 384 F.3d 429, 432–33 (7th Cir. 2004), that trace data was subject to FOIA disclosure. In direct response to that decision, Congress passed the 2005 iteration of the Tiahrt Amendment. *Everytown*, 984 F.3d at 40–41. Unlike the original Tiahrt Amendment, the 2005 iteration did not reference § 552(b)(3)(B). But the 2005 iteration did, according to the Second Circuit, "strengthen the [Amendment's] antidisclosure language to include the phrase 'all such [trace] data shall be immune from legal process.'" *Id.* (quoting Consolidated Appropriations Act, 2005, Pub. L. No. 108-447, 118 Stat. 2809, 2859–60 (2004)).

"Congress continued to use th[at] antidisclosure language throughout the 2000s and courts uniformly held that the Tiahrt [Amendments] exempted [trace] data from FOIA disclosure." *Id.* at 41 (collecting cases). That includes the first iteration of the Tiahrt Amendment post-dating FOIA's 2009 enactment. *See* Omnibus Appropriations Act, 2009, Pub. L. No. 111-8, 123 Stat. 524, 575–76 (2009). As with all post-2003 Tiahrt Amendments, the 2009 iteration did not specifically reference FOIA or § 552(b)(3)(B) in its disclosure prohibition. Notwithstanding the lack of any specific FOIA citation, the Second Circuit held that there was "no question . . . that when Congress passed the 2009 Tiahrt [Amendment], it did so intending to exempt [trace] data from FOIA disclosure." *Everytown*, 984 F.3d at 41. That is because post-FOIA iterations of the Tiahrt Amendment used the same antidisclosure language that courts had "uniformly" interpreted to

exempt trace data from FOIA disclosure. *Id.* (citing *Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 536 (2015) ("If a word or phrase has been . . . given a uniform interpretation . . . a later version of that act perpetuating the wording is presumed to carry forward that interpretation."); and *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239–40 (2009) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change.")).[2]

### b.   All other textual and contextual evidence confirms that the Tiahrt Amendment is an exemption statute for purposes of FOIA Exemption 3.

Every other piece of textual and contextual evidence confirms the propriety of ATF's invocation of the Tiahrt Amendment as an exemption statute under FOIA despite the Amendment's absence of a specific citation to § 552(b)(3)(B).

First, on the question of public disclosure of ATF trace data, the Tiahrt Amendment, as the more specific statute, should control over FOIA, the more general one. It is an "old and familiar rule" that where two statutory provisions arguably cover conduct at issue in a case, "the specific governs the general." *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645–46 (2012). That canon applies most often in cases involving a conflict between a general permission (here, FOIA) and a specific prohibition (here, the Tiahrt Amendment), especially if the two are "interrelated and closely positioned." *Id.* at 645. And it applies with particular force where—as it did with the Tiahrt Amendment and the non-disclosure of ATF trace data—"Congress

---

[2] As discussed below, the only natural reading of the Tiahrt Amendment is that there is no need for it to reference FOIA because the Tiahrt Amendment's broad mandate that "all" firearm trace data "shall be immune from legal process" must be understood to include FOIA by implication alone. Any other interpretation would render the Amendment's prohibition on disclosure meaningless.

has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions." *Id.*

Second, a determination that the Tiahrt Amendment does not trigger FOIA Exemption 3 risks gutting most if not all of the Tiahrt Amendment. It is a "cardinal rule that . . . effect shall be given to every clause and part o[f] a statute." *D. Ginsberg & Sons v. Popkin*, 285 U.S. 204, 208 (1932). The Tiahrt Amendment is explicit about the breadth of its disclosure prohibitions, providing that "no funds appropriated . . . may be used to disclose part or all of the contents of the Firearms Trace System database" and that "all such data shall be immune from legal process." 125 Stat. at 609–10; *see also United States v. Gonzales*, 520 U.S. 1, 5 (1997) (holding that the natural meaning of words like "any" or "all" is "expansive"). And it imposes those obligations in absolute and unequivocal terms (*e.g.*, use of the mandatory "shall"). 125 Stat. at 609–10. It would make little sense for Congress to use the language that it did in enacting the Tiahrt Amendment if it intended FOIA to serve as the easy work around that Baltimore now claims it is. And if that were the case, then the provision of the Tiahrt Amendment making trace data "immune from legal process" (125 Stat. at 610) would be no restriction at all—at the very least, "legal process" would have to be interpreted by the courts to mean "legal process except FOIA lawsuits."

Such a reading of the Tiahrt Amendment and FOIA would be untenable as a matter of normal statutory interpretation. *See Everytown*, 984 F.3d at 38 ("An order directing the ATF to produce the requested records pursuant to the FOIA . . . is 'unquestionably "legal process"' and therefore prohibited by the statute."). And it becomes especially so in light of the historical context, noted above, in which the Tiahrt Amendment arose. *See id.* at 40–41 (citing Seventh Circuit's recognition in *City of Chicago v. U.S. Dep't of Treasury (City of Chicago III)*, 423 F.3d 777, 782

(7th Cir. 2005), that 2005 iteration of Tiahrt Amendment showed "unmistakable" congressional intent to bar disclosure of firearm trace data).

Finally, Baltimore's proposed application of the Tiahrt Amendment would create an absurd result. There is no dispute that the Tiahrt Amendment imposes detailed restrictions on the circumstances in which law enforcement agencies can receive trace data and on how they can use it. *See* 125 Stat. 609–10. It makes no sense at all that Congress would so severely restrict when those agencies can access trace data ("solely in connection with or for use in a criminal investigation or prosecution") or how they can use the data (categorical prohibition on "public disclosure") only to turn around and give FOIA plaintiffs unfettered access to the same data and impose no restrictions on its use. It would be absurd for a statute to give the public greater access to and use of firearm trace data than law enforcement. *See Corley v. United States*, 556 U.S. 303, 316–17 (2009) (rejecting as absurd interpretation of federal evidentiary statute that would make admissible in a criminal case "a defendant's self-incriminating statement [made] to his lawyer," even if that statement was otherwise protected by attorney-client privilege).

In all its iterations, and based on all textual, contextual, and historical considerations, the Tiahrt Amendment's text prohibited disclosure of Firearms Trace System data under FOIA, both for the term of the appropriations act it was part of and at all times in the future. As the United States Court of Appeal for the Seventh Circuit held, Congress's "intent to bar access to the [Firearms Trace System] information is unmistakable," and the Tiahrt Amendment "qualifies as an Exemption 3 statute and substantively bars disclosure of the databases at issue." *City of Chicago III*, 423 F.3d at 782; *see also Dorsey v. United States*, 567 U.S. 260, 274–75 (2012) (holding that, to conclude Congress implicitly exempted the current statute from an express-citation requirement,

a court need only "assure [itself] that ordinary interpretive considerations point clearly in that direction"); *Everytown*, 984 F.3d 30, 42, 44–49 (applying *Dorsey* to the Tiahrt Amendment).

> ii. **Baltimore's FOIA requests seek information covered by the Tiahrt Amendment.**

Baltimore's FOIA requests seek four categories of information, each of which falls entirely within the scope of the Tiahrt Amendment's disclosure prohibition.

Baltimore's first and second requests seek "[r]ecords sufficient to identify the federally licensed firearms dealers that are the top ten sources of firearms recovered in Baltimore from 2018 through 2022," as well as specific information about those firearms, including the time-to-crime of those firearms and the circumstances under which each firearm was recovered. (Doc. 1-1 at 2–3.) Identifying the FFL "source" of a recovered firearm is just another way to describe the trace process. And its second request seeks information about the source of firearms recovered in Baltimore between 2018 and 2022 in connection with homicide, attempted homicide, aggravated assault, robbery, suicide, and attempted suicide. The only way to identify the "source" FFL of a recovered firearm is to use the "information required to be kept by [FFLs] pursuant to section 923(g)," information that the Tiahrt Amendment's anti-disclosure provision expressly identifies. Baltimore's first and second requests are indisputably covered by the Tiahrt Amendment.

Baltimore's third request seeks all "[u]nderlying data related to ATF's recent report on trace data showing the 'Top Source Cities' for [firearms] recovered in Baltimore" from 2017 to 2021. (Doc. 1-1 at 3.) And its fourth request seeks all "[u]nderlying data related to ATF's recent report on trace data in Baltimore showing the 'Top Recovery Cities' for recovered [firearms] sourced in Baltimore" from 2017 to 2021. (*Id.*) Of course, the "underlying data related to" a report on trace data will be information that is "maintained by the National Trace Center of [ATF]" or

"required to be kept by licensees pursuant to section 923(g)" or (and most likely) both, and will be protected from disclosure by the Tiahrt Amendment.

The Tiahrt Amendment is a qualifying exemption statute for purposes of Exemption 3, and the Tiahrt Amendment's disclosure prohibition covers the trace data Baltimore seeks. Because "the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage," *Ass'n of Retired R.R. Workers v. U.S. R.R. Ret. Bd.*, 830 F.2d 331, 336 (D.C. Cir. 1987), ATF is entitled as a matter of law to judgment confirming that it properly denied Baltimore's FOIA requests under Exemption 3.

**B.    ATF's withholding decision is consistent with the commercial and personal privacy interests protected by FOIA Exemptions 4, 6, and 7(C) and with the absence of any relevant public interest furthered by disclosure.**

ATF has, of course, declined to justify its withholding decision under any other FOIA exemptions because the Tiahrt Amendment's unequivocal command requires withholding here. Granting summary judgment in favor of ATF, as required by the Tiahrt Amendment, is entirely consistent with FOIA's balance between public access to information and the commercial and personal privacy interests, the protection of which is embodied in FOIA Exemptions 4, 6, and 7(C). Those exemptions would apply here to require withholding firearm trace data even if the Tiahrt Amendment did not mandate withholding under FOIA Exemption 3. Exemption 7(C), which protects "records or information compiled for law enforcement purposes . . . that could reasonably be expected to constitute an unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(7)(C), would also apply to the firearm trace data Baltimore seeks in its FOIA requests. *See Dep't of Just. v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 780 (1989) (noting that Exemption 7(C) uses language comparable to but broader than Exemption 6 and that any "clearly unwarranted invasion" of personal privacy sufficient to justify withholding under Exemption 6 necessarily

constitutes an "unwarranted invasion" of personal privacy sufficient to justify withholding under Exemption 7(C)).

> ### i.    *Prohibiting disclosure of ATF trace data protects legitimate privacy interests.*

FOIA seeks to maintain the balance between individual privacy interests and the public's general interest in the disclosure of information that "shed[s] light on an agency's performance of its statutory duties or otherwise let[s] citizens know what their government is up to." *Lepelletier v. Fed. Deposit Ins. Corp.*, 164 F.3d 37, 47 (D.C. Cir. 1999).

For example, FOIA Exemption 4 "shields from mandatory disclosure 'commercial or financial information obtained from a person and privileged or confidential.'" *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 433 (2019) (quoting 5 U.S.C. § 552(b)(4)). In the context of Exemption 4, "confidential" information, at a minimum, covers "commercial or financial information that is both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy." *Id.* at 440. Similarly, Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6); *Lepelletier*, 164 F.3d at 47; *Gov't Accountability Project v. U.S. Dep't of State*, 699 F. Supp. 2d 97, 105–06 (D.D.C. 2010).

At its core, firearm trace data (and including even more specifically the information included on ATF Form 4473, which an FFL is required to collect for every firearm transaction in which it engages) implicates both commercial and personal privacy interests that FOIA protects under Exemptions 4, 6, and 7(C).

As to Exemption 4, trace data is a record of a firearm's commercial transaction history. *See Am. Airlines, Inc. v. Nat'l Mediation Bd.*, 588 F.2d 863, 870 (2d Cir. 1978) (holding that for purposes of FOIA Exemption 4, "'Commercial' surely means pertaining or relating to or dealing

with commerce"). Terms under FOIA are given their "ordinary meanings," *Pub. Citizen Health Rsch. Grp. v. Food & Drug Admin.*, 704 F.2d 1280, 1290 (D.C. Cir. 1983), and a record of a commercial item's sale history—from manufacturer to distributor/retailer to purchaser—undoubtedly meets that ordinary meaning of commercial.

Firearm trace data is maintained by FFLs (under statutory and regulatory compulsion) that, in the normal course of their businesses, preserve the confidentiality of the trace data. As the United States Court of Appeals for the District of Columbia Circuit has held, "in assessing customary disclosure, the court will consider how the particular party customarily treats the information." *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 244 F.3d 144, 148 (D.C. Cir. 2001). And the record evidence in this case demonstrates that FFLs uniformly treat trace data as confidential. Three different FFL declarants have submitted affidavit testimony affirming that they keep acquisition and disposition records "strictly confidential" and "have never publicized any of th[at] information to any third party other than law enforcement when required to by law." (*See, e.g.*, Doc. 25-1 at 2, ¶ 8; Doc. 25-2 at 2, ¶ 8; Doc. 25-3 at 2, ¶ 8.) And in a survey of NSSF member FFLs, respondents uniformly confirmed that their businesses maintain that same level of confidentiality. (*See* Doc. 26-2 at 5, ¶ 18(d).)

Trace data is submitted to ATF by those FFLs only because of explicit assurances that ATF will maintain the same level of confidentiality. NSSF's member FFLs (and FFLs more generally) diligently maintain the confidentiality of all trace data. They do so because of their understanding of the disclosure prohibitions the Tiahrt Amendment imposes on them and their entirely correct belief that ATF is bound by and must strictly adhere to those same prohibitions.[3] And under

---

[3] That belief is further justified by ATF's own representations that it considers itself bound by the Tiahrt Amendment's disclosure prohibitions. *See, e.g.*, Bureau of Alcohol, Tobacco, Firearms and Explosives, *Fact Sheet: National Tracing Center* 1 (2011) ("ATF's National Tracing

Supreme Court precedent, "where commercial or financial information is both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy, the information is 'confidential'" for FOIA purposes. *Food Marketing Inst.*, 588 U.S. at 433–35, 440.

Given those private, commercial, and confidential traits, trace data falls squarely within the accepted definition of "confidential" information for purposes of FOIA Exemption 4.

So too with the scope of Exemption 6's prohibition on the disclosure of "personnel and medical files and similar files" that "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Courts have found that individuals have a sufficient interest in the privacy of their names, addresses, finances, and related information to justify withholding under Exemption 6. *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989) (recognizing that "the privacy interest of an individual in avoiding the unlimited disclosure of his or her name and address is significant"). That is because of the special solicitude courts give to the privacy interest of an individual's identity, whereabouts, and home; and also because, for purposes of Exemption 6, the privacy interest at issue need only be more than *de minimis*. *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 33 (D.C. Cir. 2002). That is the case here. Disclosure of ATF trace data inherently risks substantial infringement of individual firearm purchasers' privacy interests because completing Form 4473 requires those purchasers to disclose to a seller-FFL a significant amount of personal identifying information, including name and address. *See* 18 U.S.C.

---

Center is only authorized to trace a firearm for a law enforcement agency involved in a bona fide criminal investigation."); Bureau of Alcohol, Tobacco, Firearms and Explosives, *Crime Gun Trace Analysis Report: The Illegal Youth Firearms Market in Detroit* 17 (February 1999) ("[T]he appearance of a [FFL] or a first unlicensed purchaser of record" in a gun trace "in no way suggest that either the FFL or the first purchaser has committed criminal acts.").

§ 923(g)(1)(A); 27 C.F.R. § 478.125(e); Office of Management and Budget, OMB No. 1140-0020, Firearms Transaction Record (revised August 2023).

The disclosure of ATF trace data also jeopardizes FFLs' privacy interests because it names them as the sources of traced firearms, wrongly and unfairly connecting an FFL with the crime in which the traced firearm was used Avoiding disclosure of trace data is therefore, on its own, a sufficient privacy interest for purposes of FOIA Exemption 6 and 7(C). But those privacy interests and the magnitude of the potential harm resulting from infringement are even greater here because of the risk that the public disclosure of ATF trace data will incorrectly associate a lawful purchaser of a firearm with criminal activity. *See TransUnion, LLC v. Ramirez*, 594 U.S. 413, 433 (2021) ("The harm from being labeled a 'potential terrorist' bears a close relationship to the harm from being labeled a 'terrorist'" and the harm from being labelled a "terrorist . . . bears a sufficiently close relationship to the harm from a false and defamatory statement."); *see also Lahr v. NTSB*, 569 F.3d 964, 975–76 (9th Cir. 2009) ("The case law establishes that protection from [unwanted contact by third parties] facilitated by disclosure of a connection to a government operations or investigations is a cognizable privacy interest under Exemptions 6 and 7(C).") (collecting cases). If that information were to be publicly disclosed, individuals lawfully exercising their constitutional right to purchase firearms for self-defense would be publicly branded as criminal firearms traffickers before they had any chance to protect themselves against such disclosure. Exemptions 6 and 7(C) ensure the protection of personal information under these circumstances.

    *ii.*       **There is no substantial public interest served by disclosure.**

When addressing whether to order disclosure of information typically covered by Exemptions 4, 6, and 7(C), courts weigh the "privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would

work a clearly unwarranted invasion of personal privacy." *Lepelletier*, 164 F.3d at 46. But in doing so, courts do not consider any and all public interests. The "only relevant public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Id.* at 47. "Information that reveals little or nothing about an agency's own conduct does not further the statutory purpose." *Beck v. Dep't of Just.*, 997 F.2d 1489, 1492 (D.C. Cir. 1993) (internal quotation marks omitted). That includes information sought only for purposes unique to the FOIA plaintiff. *See Mays v. Drug Enf't Admin.*, 234 F.3d 1324, 1327 (D.C. Cir. 2000) ("[T]he . . . interest of the party requesting the document [is] irrelevant to this balancing.").

In this case, Baltimore's FOIA requests are motivated—as made clear by Baltimore's filings before the agency and this Court—by interests unique to it and wholly disconnected from ATF's performance of its statutory duties. There is no allegation in Baltimore's complaint that ATF is failing to perform or is improperly performing its firearm trace duties. Indeed, the implication of this entire FOIA case is quite the opposite: Baltimore wants ATF's trace data because it believes that the data will further its (Baltimore's) own policy goals related to firearm violence. (*See, e.g.*, Doc. 1 at 3, ¶ 7 (alleging that "[t]he flow of crime guns cannot be stopped without" ATF trace data).) The trace data only meaningfully aids state and local policy objectives if it is useful, which itself requires ATF's effective collection and maintenance of the trace data and database. Baltimore similarly acknowledges that "the Baltimore Police Department has access to eTrace for law enforcement purposes," a further tacit admission that ATF is properly carrying out its statutory duties related to firearm traces, as demonstrated by Baltimore's reliance on ATF's past trace reports. (Doc. 1 at 6–7, ¶ 23.) Baltimore, in other words, has no issue with what firearm

information ATF is collecting or how it is facilitating Baltimore law enforcement's access to that information.

The purpose of Baltimore's FOIA requests is—in its own words—to "analyze trends to inform their policy decisions, conduct targeted outreach to gun stores, hold dealers accountable for unlawful conduct, or develop information campaigns." (*See id.*; *see also id.* at 10, ¶ 35 ("Baltimore has a paramount interest in solving the gun violence and gun crime problems within its borders, including by implementing data-driven policies, holding accountable those who are the greatest sources of these crime guns, and educating the public about the source of crime guns.").) Those things reveal "nothing about [ATF's] own conduct." *See Beck*, 997 F.2d at 1492. They serve only Baltimore's unique interests, a wholly irrelevant consideration in a FOIA case. *See Mays*, 234 F.3d at 1327.

In a case like this, where a FOIA Plaintiff is seeking information that third parties are compelled to produce to the government, Exemptions 4, 6, and 7(C) should be read together to protect the privacy interests of FFLs and their customers that are protected by the Tiahrt Amendment. ATF's withholding decision under Exemption 3 is entirely consistent with the broader purposes of FOIA; the disclosure Baltimore seeks is entirely inconsistent with those same purposes. And this Court should not sanction the use of FOIA to infringe upon legitimate privacy interests in service of interests that are wholly unique to Baltimore and that FOIA itself is not intended to advance.

## C. **Practical considerations emphatically support ATF's withholding decision.**

In addition to the statutory considerations discussed above, practical considerations support ATF's withholding decision and summary judgment in its favor here.

First and foremost is the reputational and economic harm that NSSF's member FFLs (and all FFLs nationwide) will suffer as a result of disclosure. ATF has repeatedly warned litigants and

members of the public that "the appearance of a [FFL] or a first unlicensed purchaser of record" in a firearm trace "in no way suggest[s] that either the FFL or the first purchaser has committed criminal acts." (Doc. 11-3 at 11 (quoting Bureau of Alcohol, Tobacco, Firearms and Explosives, *Crime Gun Trace Analysis Report: The Illegal Youth Firearms Market in Detroit* 17 (February 1999).) ATF's admonition is nothing more than a common-sense recognition of the fact that the public is likely to assume that any FFL or individual identified in a "**<u>crime</u>** gun trace" is engaged in criminal activity, when that simply is not the case. (*See* Doc. 23-1 at ¶¶ 9, 14.)

Forging that false association is often the point of FOIA requests like Baltimore's. Special interest groups and state and municipal entities regularly seek firearm trace data as the bases for follow-on lawsuits against FFLs and firearm manufacturers. *See, e.g.*, *Ctr. for Investigative Reporting v. U.S. Dep't of Just.*, 14 F.4th 916 (9th Cir. 2021); *Everytown for Gun Safety Support Fund v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 984 F.3d 30 (2d Cir. 2020); *Lindsay-Poland v. U.S. Dep't of Just.*, No. 22-cv-07663-EMC, 2023 WL 8810796 (N.D. Cal. Dec. 19, 2023); *Brady Ctr. to Prevent Gun Violence v. U.S. Dep't of Just.*, 410 F. Supp. 3d 225 (D.D.C. 2019) (Moss, J.); *see also City of Chicago v. ATF*, 423 F.3d 777 (7th Cir. 2005) (dismissing case on remand following institution of the Tiahrt Rider). They then misuse the trace data, relying solely on a defendant's appearance in the data to create the calculated misimpression of criminal or civil wrongdoing by members of the firearms industry.

For example, last year, Everytown for Gun Safety Support Fund released a report that made sweeping and unsupported assertions about "the relationship between [firearm] sellers and [firearm] trafficking." *Inside the Gun Shop: Firearms Dealers and their Impact*, Everytown Research & Policy (July 6, 2023), https://everytownresearch.org/report/firearms-dealers-and-their-impact/ (last visited February 26, 2024). Relying on aggregate firearm trace data, the report

explicitly advances the conclusion that the ATF's above admonition warns against—that each trace signifies an illegal act by the FFL. Everytown then invites readers of a report purporting to link FFLs and "gun trafficking" to search for FFLs in their area by providing an interactive and searchable map embedded in the report's webpage. The report provides no evidence—none at all—that any of the FFLs that appear in the search have engaged in any wrongdoing. Instead, the report presents the search feature after making vague assertions that firearms are sometimes used in crimes and that sometimes firearms used in crimes were once purchased at an FFL. Worse still, the report specifically identifies, by name, several FFLs, going so far as providing pictures of those FFLs' physical storefronts. The report does not allege any wrongdoing, of any kind, by any of the identified FFLs. But it still impliedly—and unfairly—connects those FFLs specifically, and all FFLs generally, with firearm trafficking and other criminal activity. *Id.*

The Everytown report is, in other words, proof positive of the harms that result from the release of firearm trace data of the kind Baltimore seeks in this case. (Doc. 23-1 at ¶¶ 9, 11, 14.) That Everytown attorneys are of counsel in this case further demonstrates the inappropriate ends to which that information will be applied.

Baltimore does not dispute the fact that the Supreme Court has held that the public disclosure of information that incorrectly associates a party with criminal activity is a legally cognizable injury. (*See* Doc. 21 at 12 (citing *TransUnion*, 594 U.S. at 432).) In *TransUnion*, the plaintiffs sued a credit reporting agency for disseminating to third-parties credit reports that had the potential to create the misimpression that the plaintiffs were associated with terrorist groups and serious criminal activity. 594 U.S. at 431–32. The Court held that the plaintiffs had standing to sue because "[t]he harm from being labeled a 'potential terrorist' bears a close relationship to the harm from being labeled a 'terrorist,'" and the harm from being labelled a "terrorist . . . bears

a sufficiently close relationship to the harm from a false and defamatory statement." *Id.* at 433. Baseless assumptions about a firearms purchaser or an FFL engaging in criminal activity are similarly injurious. And once the information is disclosed, it is public, and there is every reason to presume that the Plaintiff or an advocacy group (including its own counsel, Everytown) will use this information to intentionally mislead the public about the relationships between firearms tracing, the firearms industry, illegal trafficking, and violent crime, as was done with the Everytown report.

## CONCLUSION

For the reasons above, Amicus Curiae NSSF respectfully requests that this Court grant ATF's motion for summary judgment and dismiss with prejudice Baltimore's FOIA lawsuit.

Respectfully submitted this 19th day of April 2024,

*/s/John Parker Sweeney*
John Parker Sweeney, Esq. (#914135)
James W. Porter, III, Esq. (#999070)
Bradley Arant Boult Cummings LLP
1615 L Street NW, Suite 1350
Washington, DC 20036
(202) 393-7150
jsweeney@bradley.com
jporter@bradley.com

ATTORNEYS FOR AMICUS CURIAE
NATIONAL SHOOTING SPORTS FOUNDATION, INC.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 19, 2024, I caused the foregoing to be filed via the Court's

ECF filing system, which automatically served a copy to all counsel of record.


*/s/ John Parker Sweeney*