UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAYOR AND CITY COUNCIL OF BALTIMORE,<br>100 N. Holliday Street<br>Baltimore, Maryland 21202,<br><br>   *Plaintiff*,<br> v.<br><br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES,<br>99 New York Avenue, NE<br>Washington, DC 20226,<br><br>   *Defendant*. | Case No. 23-cv-03762-RDM<br><br>**ORAL HEARING REQUESTED PURSUANT TO LCVR 7(F)**<br><br>**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION** |

Dated: June 21, 2024

                Respectfully submitted,

                BRIAN M. BOYNTON
                Principal Deputy Assistant Attorney General

                ELIZABETH J. SHAPIRO
                Deputy Branch Director

                */s/ Pardis Gheibi*
                PARDIS GHEIBI (D.C. Bar No. 90004767)
                Trial Attorney, U.S. Department of Justice
                Civil Division, Federal Programs Branch
                1100 L Street, N.W.
                Washington, D.C. 20005
                Tel.: (202) 305-3246
                Email: pardis.gheibi@usdoj.gov

                *Counsel for Defendant*

**TABLE OF CONTENTS**

**INTRODUCTION**..........................................................................................................................1

**ARGUMENT**.................................................................................................................................1

    **A. ATF Is Prohibited by Statute from Disclosing the Contents of the Firearms Trace System Database**..................................................................................................................1

        1. The 2012 Rider Is an Exemption 3 Statute .......................................................................1

        2. Exception C to the Rider Does Not Apply.......................................................................8

    **B. Responding to Baltimore's Request Requires ATF To Create New Records** .............11

**CONCLUSION** .............................................................................................................................13

## TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*Antonelli v. ATF*,
    2006 WL 3747312 (D.D.C. Dec. 18, 2006) ............................................................................... 3

*Ctr. for Invest. Rept'g v. DOJ*,
    14 F.4th 916 (9th Cir. 2021) ......................................................................................... 2, 8, 9

*City of Chicago v. U.S. Dep't of Treasury*,
    287 F.3d 628 (7th Cir. 2002) ................................................................................................ 3

*City of Chicago v. U.S. Dep't of Treasury*,
    384 F.3d 429 (7th Cir. 2004) ................................................................................................ 4

*City of Chicago v. U.S. Dep't of Treasury*,
    423 F.3d 777 (7th Cir. 2005) ....................................................................................... passim

*Dorsey v. United States*,
    567 U.S. 260 (2012) ............................................................................................... 2, 3, 6, 7

*Dubin v. United States*,
    143 S. Ct. 1557 (2023) ......................................................................................................... 9

*Everytown for Gun Safety Support Fund v. ATF*,
    984 F.3d 30 (2d Cir. 2020) ......................................................................................... passim

*Frank v. DOJ*,
    941 F. Supp. 4 (D.D.C. 1996) ..................................................................................... 12, 13

*Mann Constr., Inc. v. United States*,
    27 F.4th 1138 (6th Cir. 2022) .............................................................................................. 7

*Marcello v. Bonds*,
    349 U.S. 302 (1955) .......................................................................................................... 11

*Miller v. DOJ*,
    562 F.Supp.2d 82 (D.D.C. 2008) ...................................................................................... 11

*Muhammad v. DOJ*,
    2007 WL 433552 (S.D. Ala. Feb. 6, 2007) ...................................................................... 2, 3

*Nat'l Sec. Couns. v. CIA*,
    898 F. Supp. 2d 233 (D.D.C. 2012) ............................................................................ 11, 12

*Singh v. FBI*,
   574 F. Supp. 2d 32 (D.D.C. 2008) ........................................................................................3

*Skinner v. DOJ*,
   744 F. Supp. 2d 185 (D.D.C. 2010) ...................................................................................2, 3

*Thomas v. Peters*,
   48 F.3d 1000 (7th Cir. 1995) ................................................................................................4

*Watkins v. ATF*,
   2005 WL 2334277 (D.D.C. Sept. 1, 2005) .......................................................................3, 5

**Statutes**

5 U.S.C. § 552(a)(4)(B) .................................................................................................................11

5 U.S.C. § 552(b)(3)(B) ...............................................................................................................2, 6

18 U.S.C. § 923 note, Consolidated Appropriations Act, 2005,
   Pub. L. No. 108–447, 118 Stat. 2809 (2004) ............................................................... *passim*

18 U.S.C. § 923 note, Consolidated Appropriations Act, 2008,
   Pub. L. No. 110–161, 121 Stat. 1844 (2007) .......................................................................8

18 U.S.C. § 923 note, Consolidated and Further Continuing Appropriations Act, 2012,
   Pub. L. No. 112-55, 125 Stat. 552 (2011) ............................................................................8

**Legislative Histories**

H.R. Rep. No. 107-575 (2002) .......................................................................................................4

H.R. Rep. No. 108–576 (2004) .......................................................................................................9

H.R. Rep. No. 110-240 (2007) ......................................................................................................10

**Other Authorities**

*Data & Statistics*: Bureau of Alcohol, Tobacco, Firearms and Explosives, available at
https://www.atf.gov/resource-center/data-statistics (last visited on June 21, 2024) .......................8

INTRODUCTION

Under the Freedom of Information Act (FOIA), Plaintiff Mayor and City Council of Baltimore ("Plaintiff" or "Baltimore") seeks firearm trace records from the Firearms Trace System database ("FTS") maintained by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). Baltimore argues that such records are generally available through FOIA, despite an appropriations rider ("2012 Rider" or "Rider") forbidding ATF from "disclos[ing] part or all of the contents" of the database and making "all such data . . . immune from legal process," because the text of the Rider does not prohibit FOIA disclosures and the Rider does not cite FOIA Exemption 3 pursuant to the OPEN FOIA Act of 2009.

As the Second Circuit has held, the plain text and statutory history of the Rider demonstrate that Congress intended it to bar FOIA disclosures, notwithstanding the lack of an express citation to Exemption 3. Moreover, Exception C to the Rider, which provides for "the publication of annual statistical reports," is limited to the agency's own annual publications, and does not apply to Baltimore's requests for aggregate data. Lastly, responding to Baltimore's Request would require ATF to create new agency records, which conflicts with FOIA's mandate that an agency is not required to create new records in response to a FOIA Request.

Accordingly, this Court should grant summary judgment in ATF's favor.

ARGUMENT

**A. ATF Is Prohibited by Statute from Disclosing the Contents of the Firearms Trace System Database**

   1.  <u>The 2012 Rider Is an Exemption 3 Statute</u>

Since 2004, Congress has generally forbidden ATF from using appropriated funds "to disclose part or all of the contents of the Firearms Trace System database," and has made "all such data . . . immune from legal process." 18 U.S.C. § 923 note, Consolidated Appropriations Act,

1

2005, Pub. L. No. 108–447, 118 Stat. 2809, 2859–60 (2004). These prohibitions appeared in a series of "Tiahrt Riders," the last of which, the 2012 Rider, remains in effect. *See Everytown for Gun Safety Support Fund v. ATF*, 984 F.3d 30, 44–49 (2d Cir. 2020) (compiling Tiahrt Riders). In 2005, the Seventh Circuit held that the prohibitions demonstrate an "unmistakable" congressional "intent to bar access" to FTS data, and that the Tiahrt Rider containing them therefore "qualifies as an Exemption 3 statute and substantively bars disclosure" of that data through FOIA. *City of Chicago v. U.S. Dep't of Treasury*, 384 F.3d 777, 782 (7th Cir. 2005) (*"Chicago III"*). Every district court to consider the issue in that period agreed. *See Skinner v. DOJ*, 744 F. Supp. 2d 185, 204 (D.D.C. 2010) (collecting cases decided from 2005 through 2008); *Muhammad v. DOJ*, 2007 WL 433552, at *2 (S.D. Ala. Feb. 6, 2007).

In 2009, Congress enacted the OPEN FOIA Act of 2009, which amended the Freedom of Information Act to provide that later enacted statutes must "specifically cite[] to" Exemption 3 in order to come within its scope. 5 U.S.C. § 552(b)(3)(B). Congress then re-enacted the Tiahrt Rider prohibitions, without adding an express citation to Exemption 3. The Second Circuit has held that those later Tiahrt Riders continued to bar disclosure of FTS data through FOIA, just as the earlier Riders had done. *Everytown*, 984 F.3d at 42.[1]

In its motion for summary judgment, ATF urged this Court to adopt the reasoning of the Second Circuit. ATF suggested that the plain text and statutory history of the Tiahrt Rider prohibitions show that Congress meant to prohibit FOIA disclosures of trace data. Dkt. 33 at 21–27 (Gov. Br. 12–17). And the agency explained that the addition of an express-citation requirement to Exemption 3 could not defeat the "plain import" or "fair implication" of those re-enacted

---

[1] The Ninth Circuit reserved the question over the dissent of Judge Bumatay, who would have joined the Second Circuit. *Ctr. for Invest. Rept'g v. DOJ*, 14 F.4th 916, 927–32 (9th Cir. 2021); *id.* at 942–43 (Bumatay, J., dissenting).

2

prohibitions. Dkt. 33 at 22 (Gov. Br. 13) (quoting *Dorsey v. United States*, 567 U.S. 260, 274 (2012)). As the Second Circuit has held, "when Congress employed the same antidisclosure language" that it had used earlier, "Congress is best understood to have intended that language to continue to exempt FTS data from FOIA disclosure." *Everytown*, 984 F.3d at 41. Congress would not "have reenacted the exact same language" in later years "in order to accomplish the opposite result" of its earlier Tiahrt Riders. *Id.* at 42. In its cross-motion, Baltimore launches several arguments in response to the ATF's position that the 2012 Rider is an Exemption 3 statute. All the arguments fail.

*First*, Baltimore takes issue with ATF's interpretation of the text of the Riders. Specifically, Baltimore argues that ATF "misconstrues" the Riders by concluding that the Riders' prohibition of the use of appropriated funds "to disclose part or all of the contents of the Firearms Trace System database," and rendering "all such data . . . immune from legal process" exempts FTS data from FOIA disclosure. Plaintiff is wrong for several reasons.

As an initial matter, it is worth noting that following the Seventh Circuit's decision in *Chicago III* in 2005, virtually every court that has opined on the relevant text has adopted ATF's interpretation. *See, e.g., Everytown*, 984 F.3d 44–49; *Skinner*, 744 F. Supp. 2d at 204; *Singh v. FBI*, 574 F. Supp. 2d 32, 45–46 (D.D.C. 2008); *Miller v. DOJ*, 562 F.Supp.2d 82, 111–12 (D.D.C. 2008); *Muhammad*, 2007 WL 433552, at *2; *Antonelli v. ATF*, 2006 WL 3747312, at *2 (D.D.C. Dec. 18, 2006); *Watkins v. ATF*, 2005 WL 2334277, *1 (D.D.C. Sept. 1, 2005).

And for good reason. As ATF explained in detail in its opening brief, Congress began enacting the Riders in 2003 in response to a Seventh Circuit ruling ordering ATF to disclose trace records: *City of Chicago v. U.S. Dep't of Treasury*, 287 F.3d 628 (7th Cir. 2002) ("*Chicago I*"). In enacting the Riders, Congress intended "to prevent FOIA requesters from obtaining information

3

stored in the FTS database." *Everytown*, 984 F.3d at 34. Congress was "concern[ed ] that certain law enforcement databases may be subject to public release under the Freedom of Information Act." *Id.* at 34–35 (quoting H.R. Rep. No. 107-575, at 20 (2002)). Specifically, Congress discussed the "information collected and maintained by ATF related to ongoing criminal investigations of firearms, arson or explosive offenses could be released, potentially compromising those cases," H.R. Rep. No. 107-575, at 20 (2002), and feared that "'comprehensive' disclosure of this information 'to the public' would 'pose a risk' not only 'to law enforcement and homeland security, but also to the privacy of innocent citizens.'" *Everytown*, 984 F.3d at 35 (quoting H.R. Rep. No. 107-575, at 20 (2002)).

When the Seventh Circuit held that the earlier versions of the Riders did not exempt trace records from FOIA, Congress enacted a modified Rider to render the FTS data "immune from legal process." 18 U.S.C. § 923 note, Consolidated Appropriations Act, 2005, Pub. L. No. 108–447, 118 Stat. 2809, 2859–60 (2004); *see City of Chicago v. U.S. Dep't of Treasury*, 384 F.3d 429, 432–33 (7th Cir. 2004) ("*Chicago II*"), *vacated on reh'g*, *Chicago III*, 423 F.3d. In response to this modified language, the Seventh Circuit reasoned that "Congress' obvious intention in adding the 'immune from legal process' language to the funding restriction that existed under prior riders was to cut off access to the databases for any reason not related to law enforcement." *Chicago III*, 423 F.3d at 780. The Seventh Circuit went on to explain that "although Congress did not specifically use the verb 'withhold' when referring to the trace and sales data, its intent to bar access to the information is unmistakable." *Id.* at 782; *see also id.* ("[I]t is not adequate discharge of duty for courts to say: We see what you are driving at, but you have not said it, and therefore we shall go on as before." (quoting *Thomas v. Peters*, 48 F.3d 1000, 1011 (7th Cir. 1995) (Easterbrook, J., concurring))).

4

Baltimore now attempts to rehash the statutory debate that was settled by *Chicago III* and subsequently followed by virtually every other court. *See supra* p. 3. Indeed, Baltimore launches virtually the same statutory arguments that Plaintiff launched in *Chicago III*. Like the plaintiff in *Chicago III*, Baltimore argues that the Rider is simply a limitation on the use of appropriated funds, and because Baltimore is willing to pay for the retrieval and production of the data it requests, the Rider is inapplicable. Dkt. 36 at 22 (Pl.'s Br. 13). *Chicago III* rejected that argument—rightly so. The Rider not only prohibits the use of appropriated funds but mandates that "all such data shall be immune from legal process." *Chicago III*, 423 F.3d at 782. This additional limitation highlights that Congress' concern went beyond budgetary constraints and extended to disclosures of the FTS database in general. *Id.* This reading is also supported by the legislative history. As a court in this district has already recognized, "[t]he legislative history makes clear that Congress … sought to prevent the public release of sensitive firearms trace data not so much for budgetary reasons than out of concern that such disclosures could jeopardize criminal investigations." *Watkins*, 2005 WL 2334277, *1.

Next, once again echoing the arguments raised by Plaintiff in *Chicago III,* Baltimore attempts to undermine the significance of the "all such data shall be immune from legal process" language by limiting it to the law-enforcement exceptions. According to Baltimore, Congress "added that language immediately *after* stating the law enforcement exceptions, so that it logically follows as a refinement of the exceptions." Dkt. 36 at 26 (Pl.'s Br. 17). This Court should reject this argument. As *Chicago III* explained, the only other reference to "data" in the Rider is "the contents of the Firearms Trace System database"; so, the "common-sense reading" of the statute is that "such data" that is "immune from legal process" refers to the "contents of the Firearms Trace System database." *Chicago III*, 423 F.3d at 780–81. Moreover, Baltimore's reading would

5

lead to an unreasonable result: "the portion of the databases in law enforcement's hands would be 'immune from legal process,' but the remaining portion of the databases, the extensive data not produced to law enforcement, would be accessible to anyone willing to pay for it." *Id.* at 781. Faced with this problematic consequence of its interpretation, Baltimore attempts to salvage its reading by doubling down on it: it argues that, in fact, "there's good reason" for Congress to limit the immunity to data provided to law enforcement because "[d]ata provided to law enforcement agencies is more expansive and sensitive than what would be provided to members of the public under FOIA or a state analogue." Dkt. 36 at 24 (Pl.'s Br. 15 n.7). Baltimore provides no support for this sweeping statement—nor could it. ATF maintains a great deal of sensitive information that may or may not be provided to law enforcement agencies for a variety of reasons.

*Second*, Baltimore argues that the Rider is not an Exemption 3 statute because it does not cite to Exemption 3 as required by the OPEN FOIA Act of 2009. 5 U.S.C. § 552(b)(3)(B). But as the Supreme Court has explained, "statutes enacted by one Congress cannot bind a later Congress, which remains free to repeal the earlier statute, to exempt the current statute from the earlier statute, to modify the earlier statute, or to apply the earlier statute but as modified." *Dorsey*, 567 U.S. at 274. "And Congress remains free to express any such intention either expressly or by implication." *Id.* To conclude that Congress has implicitly exempted the current statute from an express-citation requirement, a court need only "assure [itself] that ordinary interpretive considerations point clearly in that direction." *Id.* at 275. The Court has used phrases "such as 'plain import,' [and] 'fair implication,'" to describe "the need for that assurance." *Id.*

The Supreme Court summarized this treatment of express-citation requirements in *Dorsey*, drawing on earlier cases involving both the sentencing statute at issue there and the Administrative Procedure Act. *Id.* at 274 (noting that "in a comparable context the Court has emphasized that the

6

Administrative Procedure Act's use of the word 'expressly' does not require Congress to use any 'magical passwords' to exempt a later statute from the provision" (quoting *Marcello v. Bonds*, 349 U.S. 302, 310 (1955))). Courts have rightly understood *Dorsey* to articulate a general approach to the situation in which a later-enacted statute must be interpreted in light of an earlier express-citation requirement. *E.g.*, *Mann Constr., Inc. v. United States*, 27 F.4th 1138, 1144–45 (6th Cir. 2022). Baltimore would instead confine *Dorsey* to its facts. In doing so, Baltimore makes much of the fact that the statute in *Dorsey* "presume[d] to project itself outward, to govern the means by which Congress can amend federal criminal statutes in perpetuity," whereas the OPEN FOIA Act "is a refinement of FOIA, further delineating FOIA's own scope and reach." Dkt. 36 at 34 (Pl.'s Br. at 25). Baltimore's argument misses the point. At bottom, the reasoning in *Dorsey* applies with equal force here: when an earlier Congress purports to impose an express-citation requirement on a later Congress, the court must look to the intent of the later Congress and give full effect to "the will of Congress as manifested either expressly or by necessary implication in a subsequent enactment." *Dorsey*, 567 U.S. at 274 (citation omitted).

As the Second Circuit rightly held, "the plain import of the 2012 Tiahrt Rider exempts FTS data from FOIA disclosure, and that statute must be given effect regardless of the specific-citation requirement" that now appears in FOIA Exemption 3. *Everytown*, 984 F.3d at 42; *accord Ctr. for Invest. Rept'g*, 14 F.4th at 943 (Bumatay, J., dissenting) ("I would construe the . . . express-statement rule as merely a 'background principle of interpretation,' and hold that the later-enacted Tiahrt Amendment controls." (quoting *Dorsey*, 567 U.S. at 274)).

Because the text of the Rider clearly exempt FTS's trace data from FOIA disclosures and the OPEN FOIA Act's express-citation requirement cannot override the plain import of the Rider,

7

this Court should hold that Plaintiff's Request, which seeks trace data from FTS's database, is exempt from FOIA disclosure.

### 2. Exception C to the Rider Does Not Apply

In the alternative, Plaintiff argues that even if the Rider is an Exemption 3 statute, disclosure of the requested aggregate data is proper under Exception C of the Rider, which permits "the publication of annual statistical reports on products regulated by [ATF] . . . or statistical aggregate data regarding firearms traffickers and trafficking channels, or firearms misuse, felons, and trafficking investigations." 18 U.S.C. § 923 note, Consolidated and Further Continuing Appropriations Act, 2012, Pub. L. No. 112-55, 125 Stat. 552, 610 (2011). Once again, Plaintiff is wrong.

Exception C first appeared in the 2008 Rider and permits the "publication" by ATF of "annual statistical reports." 18 U.S.C. § 923 note, Consolidated Appropriations Act, 2008, Pub. L. No. 110–161, 121 Stat. 1844, 1903–04 (2007). Consistent with that statutory authorization, ATF publishes a limited number of aggregate statistical reports derived from trace data that the agency believes will provide helpful insights to the public without disclosing sensitive law enforcement or other material. *See* Dkt. 33-1 at 4 (Declaration of Elizabeth A. Wood dated April 15, 2024 ("Wood Decl.") ¶ 8); *see Data & Statistics*: Bureau of Alcohol, Tobacco, Firearms and Explosives, available at https://www.atf.gov/resource-center/data-statistics (last visited on June 21, 2024).

Relying on the Ninth Circuit's flawed reasoning and several dictionary definitions, Baltimore asserts that its request for aggregate data meets the Exception's "publication" requirement because "[t]he plain meaning of 'publication' signifies 'disclosure to the public, rather than the disclosure of information to another individual or corporation within the context of a

8

business or professional relationship.'" Dkt. 36 at 39 (Pl.'s Br. 30) (quoting *Ctr. for Invest. Rept'g*, 14 F.4th at 934).

Plaintiff's interpretation is flawed because it strips the word "publication" of context and interprets it in isolation. *See Dubin v. United States*, 143 S. Ct. 1557, 1566 (2023) ("[A] statute's meaning does not always turn solely on the broadest imaginable definitions of its component words . . . . [i]nstead, [l]inguistic and statutory context also matter." (internal citation and quotations omitted)). As the Second Circuit explained, the word "publication" cannot be read as synonymous with "disclosure" in the context of the Rider, as "[t]he rider uses the term 'disclosure' in a different exception." *Everytown*, 984 F.3d at 44; *see also id.* ("[P]roviding that the statute shall not be construed to prevent 'the disclosure of statistical information concerning total production, importation, and exportation by firearms manufacturers and importers'" (quoting 125 Stat. at 610)).

Moreover, when read in light of the legislative history, it becomes clear that the purpose of the Exception had nothing to do with FOIA disclosures. As explained in the House Report accompanying the passage of the 2005 Rider:

> At the same time, the Committee is concerned that the previous language has been interpreted to prevent publication of a long-running series of statistical reports on products regulated by ATF. This was never the intention of the Committee, and the new language should make clear that those reports may continue to be published in their usual form as they pose none of the concerns associated with law enforcement sensitive information.

H.R. Rep. No. 108–576, at 30 (2004). To address this issue and to permit the publication of statistical reports by ATF, the 2005 Rider included the following language: "except that this proviso shall not be construed to prevent the disclosure of statistical information concerning total production, importation, and exportation by each licensed importer . . . and licensed manufacturer

9

. . . ." 18 U.S.C. § 923 note, Consolidated Appropriations Act, 2005, Pub. L. No. 108–447, 118 Stat. 2809, 2860 (2004). This language was further revised in the 2008 Rider and was reproduced verbatim in the 2012 Rider. The House Report concerning this provision in the 2008 Rider similarly explained:

> At the same time, the Committee is concerned that the previous year's language has been interpreted to prevent publication of a long-running series of statistical reports on products regulated by ATF. This was never the intention of the Committee, and the fiscal year 2008 language makes clear that those reports may continue to be published in their usual form as they pose none of the concerns associated with law enforcement sensitive information.

H.R. Rep. No. 110–240, at 63 (2007). Thus, the legislative history of Exception C shows that Congress intended "publication" to refer to the "publication of a long-running series of statistical reports" by ATF, not to FOIA disclosures. ATF's statutory authority to compile and publish certain aggregate statistical data in the public interest under Exception C cannot reasonably be interpreted to imply that a FOIA request can compel the agency to create a customized statistical analysis of the FTS database at the direction of a FOIA plaintiff or requester.

Moreover, this Court should reject Plaintiff's erroneous interpretation of Exception C because it effectively nullifies the general prohibitions against disclosure in the 2012 Rider. As the Second Circuit aptly observed, "[i]f the publication exception means that FTS data relating to firearms misuse is freely available to FOIA requesters, it would eviscerate the rider's general prohibition on disclosure." *Everytown*, 984 F.3d at 44. Plaintiff attempts to downplay this problem by arguing that the general prohibition would not be eviscerated because FTS would not be compelled to disclose the underlying raw data; but rather, it would be required to disclose statistical aggregate data. Dkt. 36 at 41 (Pl.'s Br. 32). Needless to say, limiting the disclosures to aggregate data would not resolve the problem. To the contrary, it would mean that instead of simply releasing

10

the raw data to the petitioner, ATF must package the raw data in aggregate form using whichever criteria the petitioner demands.

This Court should reject Plaintiff's interpretation of Exception C, which would effectively nullify the Rider's prohibition on FOIA disclosures of FTS data.

### B. Responding to Baltimore's Request Requires ATF To Create New Records

The Parties agree that ATF cannot be compelled to create a new document or record in response to the FOIA Request. *See* 5 U.S.C. § 552(a)(4)(B). The dispute in this case is whether Parts 1 and 2 of Plaintiff's FOIA Request, which demand statistical summaries related to traces of firearms recovered in Baltimore from 2018 to 2022, would require ATF to create new records.

Baltimore argues that responding to Parts 1 and 2 of the Request would not require ATF to create new records because the creation of the aggregate data requested only requires ATF to query the FTS database. Dkt. 36 at 43 (Pl.'s Br. 34). But ATF's position is not that aggregate statistical data in the FTS database are immune from release under FOIA because they must be retrieved by a query of the database; rather, ATF's argument is that producing "aggregate statistical data" requires the creation of records that presently do not exist. Dkt. 33-1 at 10–11 (Wood Decl. ¶¶ 24–26).

This case is analogous to *Nat'l Sec. Couns. v. CIA*, 898 F. Supp. 2d 233 (D.D.C. 2012), which the court considered an analogous FOIA request and held that it amounted to the creation of a new record:

> Producing a listing or index of records . . . is different than producing particular points of data (*i.e.,* the records themselves). This is because a particular listing or index of the contents of a database would not necessarily have existed prior to a given FOIA request . . . .The same would be true of paper, rather than electronic, electronic, records. For example, if a FOIA request sought 'an inventory of all nonelectronic records created in 1962 regarding the Cuban Missile Crisis,' an agency need not create an inventory if one did not already exist, though the agency would need to release any

11

> such non-electronic records themselves if they were requested and were not exempt from disclosure. Therefore, a FOIA request for a listing or index of a database's contents that does not seek the contents of the database, but instead essentially seeks information about those contents, is a request that requires the creation of a new record, insofar as the agency has not previously created and retained such a listing or index.

*Id.* at 271 (citation omitted). Here, Plaintiff is seeking customized statistical reports similar to indexes of specific firearm trace records, which do not presently exist, and which ATF cannot be compelled to create under FOIA.

Plaintiff attempts to downplay the process required to create the aggregate data by arguing that ATF "misconstrues Baltimore's FOIA Request." Dkt. 36 at 44 (Pl.'s Br. 35). According to Baltimore, it did not "ask for a polished report," and in responding to the Request, "ATF need only query the database using relevant search criteria." *Id.* Baltimore's argument misunderstands the process ATF must undertake to "aggregate" FTS data in the first place. As the Wood declaration outlines, ATF does not currently maintain the aggregate data that Baltimore requests. Dkt. 33-1 at 10–11 (Wood Decl. ¶¶ 24–26). In order to aggregate the data using the criteria Baltimore has identified, ATF will need to do more than simply "query" the database. Rather, after pulling the relevant data by searching the FTS database using the criteria identified by Plaintiff, ATF must further analyze and compare the pulled data to "aggregate" it by, among other things, analyzing many free-form fields of associated recovery locations and purchaser information. *Id.*

In sum, responding to Parts 1 and 2 of Plaintiff's Request would undoubtedly require ATF to create new aggregate reports that it does not currently maintain. This Court should reject Plaintiff's request to compel ATF to create new aggregate reports in order to respond to Parts 1 and 2 of Plaintiff's Request. *See Frank v. DOJ*, 941 F. Supp. 4, 5 (D.D.C. 1996) ("The Justice Department is not required, by FOIA or by any other statute, to dig out all the information that

might exist, in whatever form or place it might be found, and to *create* a document that answers plaintiff's question.") (emphasis in original).

## CONCLUSION

For the foregoing reasons, ATF respectfully requests that the Court grant summary judgment in its favor, as set out above, and deny Plaintiff's cross-motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Dated: June 21, 2024  Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

*/s/ Pardis Gheibi*
PARDIS GHEIBI (D.C. Bar No. 90004767)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 305-3246
Email: pardis.gheibi@usdoj.gov

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2024, I electronically filed this document with the Court by using the CM/ECF system, and that this document was distributed via the Court's CM/ECF system.

*/s/ Pardis Gheibi*