**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| MAYOR AND CITY COUNCIL OF BALTIMORE,<br><br>         *Plaintiff*,<br><br>    v.<br><br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES,<br><br>         *Defendant*. | No. 1:23-cv-03762-RDM<br><br><br>**ORAL HEARING REQUESTED PURSUANT TO LCvR 7(f)** |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

I.      THE 2012 TIAHRT RIDER IS NOT AN EXEMPTION 3 STATUTE. ........................... 2

        A.     The Plain Language of the 2012 Tiahrt Rider Does Not Purport to Withhold ATF Trace Data. ..................................................................................... 2

        B.     The 2012 Tiahrt Rider Does Not Nullify the OPEN FOIA Act. ........................... 6

II.     EVEN IF THE COURT FINDS THAT THE 2012 TIAHRT RIDER IS A WITHHOLDING STATUTE, THE RECORDS BALTIMORE SEEKS SHOULD BE DISCLOSED BECAUSE THEY FALL WITHIN SUBPART C. ............................. 9

III.    DISCLOSURE WOULD NOT REQUIRE THE CREATION OF NEW RECORDS. .................................................................................................... 12

CONCLUSION .................................................................................................................. 16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACLU v. U.S. Dep't of Just.*,
   655 F.3d 1 (D.C. Cir. 2011) ....................................................9

*Am. Forest Res. Council v. United States*,
   77 F.4th 787 (D.C. Cir. 2023) ...............................................6

*Branch v. Smith*,
   538 U.S. 254 (2003) ...............................................................6

*Brown v. District of Columbia*,
   324 F. Supp. 3d 154 (D.D.C. 2018) .....................................6

*Canadian Lumber Trade All. v. United States*,
   517 F.3d 1319 (Fed. Cir. 2008) .............................................8

*Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*,
   993 F.3d 880 (D.C. Cir. 2021) ..............................................7

*City of Chicago v. U.S. Dep't of Treasury*,
   423 F.3d 777 (7th Cir. 2005) .............................................4, 5

*City of New York v. Beretta U.S.A. Corp.*,
   429 F. Supp. 2d 517 (E.D.N.Y. 2006) ................................4, 8

*Ctr. for Investigative Reporting v. U.S. Dep't of Just.*,
   14 F.4th 916 (9th Cir. 2021) ........................................ *passim*

*Dorsey v. United States*,
   567 U.S. 260 (2012) .........................................................7, 8, 9

*Epic Sys. Corp. v. Lewis*,
   584 U.S. 497 (2018) ...............................................................6

*Everytown for Gun Safety Support Fund v.
   Bureau of Alcohol, Tobacco, Firearms  & Explosives*,
   403 F. Supp. 3d 343 (S.D.N.Y. 2019)..................................13

*Everytown for Gun Safety Support Fund v.
   Bureau of Alcohol, Tobacco, Firearms  & Explosives*,
   984 F.3d 30 (2d Cir. 2020).......................................... *passim*

*Integrated Genomics, Inc. v. Gerngross*,
   636 F.3d 853 (7th Cir. 2011) ...............................................10

*Long v. CIA*,
    No. 15-cv-1734, 2019 WL 4277362 (D.D.C. Sep. 10, 2019)................................................15

*Mann Constr., Inc. v. United States*,
    27 F.4th 1138 (6th Cir. 2022) ......................................................................................8

*Nat'l Ass'n of Home Builders v. Norton*,
    309 F.3d 26 (D.C. Cir. 2002) .......................................................................................9

*Nat'l Sec. Couns. v. CIA*,
    898 F. Supp. 2d 233 (D.D.C. 2012) ..................................................................14, 15, 16

*Scarlett v. Off. of Inspector Gen.*,
    No. 21-cv-819, 2023 WL 2682259 (D.D.C. Mar. 29, 2023) ...........................................2

*Schladetsch v. U.S. Dep't of HUD*,
    No. 99-cv-0175, 2000 WL 33372125 (D.D.C. Apr. 4, 2000).......................................14, 15

*Sierra Club v. Wheeler*,
    956 F.3d 612 (D.C. Cir. 2020) .....................................................................................2

*United States v. Fausto*,
    484 U.S. 439 (1988)....................................................................................................5

**Statutes**

5 U.S.C. § 552(b)(3) ............................................................................................... *passim*

5 U.S.C. § 552(b)(7) ........................................................................................................6

Consolidated and Further Continuing Appropriations Act, 2012, Pub. L. No. 112-
    55, 125 Stat. 552 (2011)........................................................................................ *passim*

**Miscellaneous**

155 Cong. Rec. S3175 (daily ed. Mar. 17, 2009) ...........................................................9

Champe Barton, *Avoiding a Legal Battle, the ATF Has Released Near-
Unprecedented Gun Trafficking Data*, The Trace (June 19, 2024) .......................................12

*Black's Law Dictionary* (12th ed. 2024)..................................................................3, 11

Bureau of Alcohol, Tobacco, Firearms and Explosives, *Firearms Trace Data –
2022*, https://www.atf.gov/resource-center/firearms-trace-data-2022 (last
reviewed Oct. 11, 2023)...............................................................................................10

Bureau of Alcohol, Tobacco, Firearms and Explosives, ATF Firearms Tracing
  Guide: Tracing Firearms to Reduce Violent Crimes (March 2012),
  https://www.atf.gov/firearms/docs/guide/atf-firearms-tracing-guide-atf-p-
  331213/download .................................................................................................. 13

*Com., Just., Sci., & Related Agencies Appropriations for 2009: Hearings Before
  the Subcomm. on Com., Just., Sci. & Related Agencies of the H. Comm. on
  Appropriations, Part 5*, 110th Cong. (2008) ......................................................... 11

*Confirmation Hearings on Fed. Appointments: Hearings Before the S. Comm. on
  the Judiciary, Part 2*, 110th Cong. (2009) ............................................................ 12

## INTRODUCTION

Baltimore seeks critical gun crime data maintained in ATF's Firearms Trace System ("FTS") database for the most fundamental governmental purpose: safeguarding the City's residents. ATF refuses to turn over the data, relying primarily on the 2012 Tiahrt Rider, a provision tucked away in the Consolidated and Further Continuing Appropriations Act of 2012. ATF misreads the text of the statute, and it compounds this error by asking the Court to disregard the OPEN FOIA Act of 2009.

The 2012 Tiahrt Rider is not a FOIA withholding statute. First, the plain language of the rider makes clear that it is a funding limitation, not a withholding statute. Second, the rider does not expressly cite to or impliedly repeal the OPEN FOIA Act. The 2012 Tiahrt Rider can, and therefore must, be harmonized with the OPEN FOIA Act. And even if the Court were to conclude that the express-reference requirement in the OPEN FOIA Act serves only as "a background principle of interpretation," it is illogical to construe an appropriations bill—that does not prohibit disclosure—to be a FOIA withholding statute, especially in light of this background principle.

In its opposition, ATF fails to address the many cases from the Supreme Court, this Circuit, and other Circuit courts that have given effect to the similar express-reference requirements that are found in dozens of statutes. Instead, it relies primarily on cases that predate both the OPEN FOIA Act and the 2012 Tiahrt Rider and therefore have limited interpretive relevance to either statute. It also places great weight on the Second Circuit's decision in *Everytown for Gun Safety Support Fund v. Bureau of Alcohol, Tobacco, Firearms & Explosives*—a decision which mistakenly assumed that the 2012 Tiahrt Rider (an appropriations rider) and the OPEN FOIA Act are "conflicting provision[s] of equal stature." 984 F.3d 30, 37 (2d Cir. 2020) [hereinafter "*Everytown*"]. They are neither.

1

In all events, even if this Court were to hold that the 2012 Tiahrt Rider is a withholding statute, Baltimore still would be entitled to the data it seeks under Subpart C of the rider, which permits the release of the very "statistical aggregate data" that Baltimore intends to publish to the public. ATF's attempt to avoid disclosure by arguing that producing the data would require it to create a new record is out of step with precedent and reality.

Baltimore respectfully requests that this Court grant Baltimore's motion for summary judgment in full and deny ATF's motion for summary judgment in full.

## ARGUMENT

## I.   THE 2012 TIAHRT RIDER IS NOT AN EXEMPTION 3 STATUTE.

"When an agency withholds records based on a FOIA exemption, it bears the burden of justifying its withholding." *Scarlett v. Off. of Inspector Gen.*, No. 21-cv-819, 2023 WL 2682259, at *3 (D.D.C. Mar. 29, 2023). ATF cannot satisfy that burden because (1) the plain language of the 2012 Tiahrt Rider makes clear it is not a withholding statute, and (2) the 2012 Tiahrt Rider does not cite to, impliedly repeal, or overcome the important background principle established by the OPEN FOIA Act.

### A.   The Plain Language of the 2012 Tiahrt Rider Does Not Purport to Withhold ATF Trace Data.

ATF's opposition fails to engage with the actual language of the 2012 Tiahrt Rider. Like the court decisions on which it relies, it has little to say in the way of textual analysis, and instead supports its position with an appeal to statutory history. But this is a case of statutory interpretation, and "as always, our inquiry starts from the fundamental canon that statutory interpretation begins with the language of the statute itself." *Sierra Club v. Wheeler*, 956 F.3d 612, 617 (D.C. Cir. 2020).

The 2012 Tiahrt Rider was enacted as part of the 2012 congressional appropriations process. *See generally* Pl. Br. 12–14. It provides that "no funds appropriated under this or any

other Act may be used to disclose part or all of the contents of the Firearms Trace System database[.]" The 2012 Tiahrt Rider does not say that ATF may withhold information from its trace database—only that it may not spend appropriated funds to disclose it. *See Ctr. for Investigative Reporting v. U.S. Dep't of Just.*, 14 F.4th 916, 933 n.9 (9th Cir. 2021) [hereinafter *CIR*] ("In other words, under FOIA, the agency has a legal obligation to disclose the materials that [plaintiff] seeks, but it cannot fulfill that obligation using congressionally appropriated funds.").[1]

As demonstrated in Baltimore's Cross-Motion, the rider's restriction on the use of appropriated funds is beside the point here because Baltimore has volunteered to pay all costs associated with its FOIA Request. Pl. Br., ECF No. 35-1, at 12–13. ATF *does not dispute* that it would not have to expend appropriated funds to search for and produce the records Baltimore seeks, thus the "no funds appropriated" clause offers no aid to ATF's interpretation of the 2012 Tiahrt Rider.

ATF instead hangs its hat on the "all such data shall be immune from legal process" clause found later in the 2012 Tiahrt Rider. Even reading that language out of context, as ATF insists on doing, if Congress had wanted to shield the contents of ATF's database from disclosure under FOIA, that would be an exceedingly odd way to do so, since disclosure under FOIA is not, itself, "legal process." *See* Process, *Black's Law Dictionary* (12th ed. 2024) (defining "process" as "[t]he proceedings in any action or prosecution" and "[a] summons or writ, esp. to appear or respond in court . . . [a]lso termed *judicial process*; *legal process*" and separately defining "legal process" as "[p]rocess validly issued"). Had Congress wanted to bar disclosure under FOIA, it would have said so—just as it has done in myriad other statutes. *See* Pl. Br. 19 n.9.

---

[1] This language is in contrast to the original version of the Tiahrt Rider, which explicitly prohibited disclosure pursuant to FOIA. *See Everytown*, 984 F.3d at 44–45 (citing 2003 Tiahrt Rider).

But when put back into context, ATF's atextual reading of the "all such data shall be immune from legal process" clause falls apart. The text and structure of the 2012 Tiahrt Rider demonstrate that the clause refers to data disclosed under the three law enforcement exceptions— not to all data in the FTS database.[2] Pl. Br. 14–16.

ATF declares that this interpretive matter was settled by the Seventh Circuit in *City of Chicago v. U.S. Dep't of Treasury*, 423 F.3d 777 (7th Cir. 2005) [hereinafter *Chicago III*]. Gov. Opp., ECF No. 38, 5–6.[3] Hardly. Whether the "all such data" provision makes the 2012 Tiahrt Rider a withholding statute "was by no means settled when the OPEN FOIA Act was enacted in 2009." *CIR,* 14 F.4th at 931 n.5. To the contrary, in 2006, the Eastern District of New York concluded that this phrase "can only refer to the data to be disclosed to law enforcement recipients, since only that data has a connection to federal expenditures." *City of New York v. Beretta U.S.A. Corp.*, 429 F. Supp. 2d 517, 526 (E.D.N.Y. 2006); *see also id.* ("The 2006 rider bars the use of appropriated funds for the future disclosure of ATF trace data to anyone besides law enforcement recipients and then imposes further restrictions in order to ensure the proper use of data that has been so disclosed.").[4] Similarly, the Ninth Circuit recently observed that "Congress certainly spoke

---

[2] The three law enforcement exceptions refer to "(1) a Federal, State, local, or tribal law enforcement agency, or a Federal, State, or local prosecutor; or (2) a foreign law enforcement agency solely in connection with or for use in a criminal investigation or prosecution; or (3) a Federal agency for a national security or intelligence purpose." *See also* Pl. Br. 13–15.

[3] *Chicago III* was wrongly decided. The decision turns on the court's sweeping assertion that "Congress' obvious intention in adding the 'immune from legal process' language to the funding restriction that existed under prior riders was to cut off access to the databases for any reason not related to law enforcement." 423 F.3d at 780. The court, like ATF here, read that language out of context. If Congress wanted to "cut off access," it would have just written: "Pursuant to Exemption 3, the contents of the Firearms Database shall not be disclosed publicly."

[4] In concluding that the 2012 Tiahrt Rider is a withholding statute, the Second Circuit mistakenly relied on the belief that there is a "uniform" understanding of this key phrase. *See Everytown,* 984 F.3d at 41. However, *CIR* and *Beretta* make clear that this was incorrect.

more plainly with regard to disclosure in other portions of its appropriations bills." *CIR,* 14 F.4th at 931 n.5.

What's more, when the Seventh Circuit interpreted the 2005 Rider, the requirements of FOIA's Exemption 3 were different—there was no requirement that withholding statutes specifically cite to 5 U.S.C. § 552(b)(3). This Court must interpret the 2012 Tiahrt Rider in light of the Exemption 3 requirements *as they exist now.* Thus, even if this Court accepts ATF's argument that the express reference requirement created by the OPEN FOIA Act is nothing more than a "background principle of interpretation," it is a background principle that matters when interpreting the phrase "all such data shall be immune from the legal process." *See United States v. Fausto*, 484 U.S. 439, 453 (1988) ("This classic judicial task of reconciling many laws enacted over time, and getting them to 'make sense' in combination, necessarily assumes that the implications of a statute may be altered by the implications of a later statute."). There is no reason to believe that the Seventh Circuit would have come to the same conclusion under the current text of Exemption 3, particularly since it recognized that courts "cannot ignore clear expressions of Congressional intent[.]" *Chicago III*, 423 F.3d at 782.

ATF also says that Baltimore's reading of "such data" must be wrong because it would lead to an anomalous result: whatever information the agency happens to produce to law enforcement would be shielded from disclosure, even as everything else in the database is available for the asking. Gov. Opp. 5–6. That is wrong. First, there is nothing unreasonable about interpreting an appropriations rider to be a statute regulating how congressional funds are spent. And although ATF warns that it "maintains a great deal of sensitive information," *id.* at 6, ATF

fails to acknowledge that such data could still be withheld under FOIA's other exemptions. *See, e.g.*, 5 U.S.C. § 552(b)(7) (ability to withhold sensitive law enforcement information).[5]

Conversely, once ATF provides information from its database to state, local, and foreign law enforcement, that information is no longer subject to the protection of any FOIA exemptions. The rider therefore prevents release of some of the most sensitive data from disclosure to law enforcement officials. Such sensitive data includes information that "would compromise the identity of any undercover law enforcement officer or confidential informant." The rider likewise prohibits public disclosure of information received by law enforcement, including through "legal process." In that way, the 2012 Tiahrt Rider ensures that the disclosure limitations embodied in the various FOIA exemptions are given effect, even though FOIA does not apply to state, local and foreign law enforcement agencies.

### B.    The 2012 Tiahrt Rider Does Not Nullify the OPEN FOIA Act.

Baltimore is entitled to summary judgment for a second, independent reason. If enacted after the OPEN FOIA Act, only statutes that reference Exemption 3 are Exemption 3 statutes. 5 U.S.C. 552(b)(3). ATF agrees that the 2012 Tiahrt Rider makes no reference to Exemption 3, Gov. Br., ECF No. 33, 2; it is thus not an Exemption 3 statute. The analysis is simple and straightforward.

To avoid operation of the OPEN FOIA Act and prevail on its interpretation, ATF must demonstrate an irreconcilable conflict between the 2012 Tiahrt Rider and the OPEN FOIA Act. *See, e.g.*, *Brown v. District of Columbia*, 324 F. Supp. 3d 154, 161 (D.D.C. 2018) (reiterating the long-established rule that "an implied repeal will only be found where provisions in two statutes are in irreconcilable conflict, or where the latter Act covers the whole subject of the earlier one

---

[5] ATF has not invoked any FOIA Exemption in its denial of Baltimore's Request other than Exemption 3.

and is clearly intended as a substitute" (internal quotation marks omitted) (quoting *Branch v. Smith*, 538 U.S. 254, 273 (2003))). Under Baltimore's interpretation of these statutes, there is no conflict between the two statutes. On ATF's reading, the OPEN FOIA Act of 2009 is rendered a nullity. But "[i]t is this Court's duty to interpret Congress's statutes as a harmonious whole rather than at war with one another." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502 (2018); s*ee also Am. Forest Res. Council v. United States*, 77 F.4th 787, 799 (D.C. Cir. 2023) (explaining that the two acts at issue "can reasonably be read in a manner that renders the statutes harmonious" and "[b]ecause it can be so read, it must be"), *cert. denied*, 144 S. Ct. 1110 (2024).

ATF's urging that the Court ignore the OPEN FOIA Act is premised on its overreading of *Dorsey v. United States*, 567 U.S. 260 (2012). According to ATF's theory, *Dorsey* both eradicated the force of all express reference requirements from the U.S. Code and, *sub silentio*, changed the standard for implied repeal. This reads too much into too little. With respect to the 1871 Federal Savings Statute, *Dorsey* said only that "Congress remains free to express [its] intention either expressly or by implication as it chooses." 567 U.S. at 274.[6]

Critically, since *Dorsey* was decided, this Circuit has applied the doctrine of implied repeal—not some lesser standard—to evaluate the relationship between older statutes with express reference requirements and later statutes that do not expressly overrule them. *Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 993 F.3d 880, 892 (D.C. Cir. 2021).

---

[6] The structure of the outward and future-looking 1871 Federal Savings Statute is also very different from the OPEN FOIA Act, which simply sets requirements for what qualifies as an Exemption 3 withholding statute. Thus, the Supreme Court's interpretation of the Fair Sentencing Act in *Dorsey* was based on "[s]ix considerations, taken together," which included not only the background principle set forth by the Federal Savings Statute but also the "special and different background principle" set forth by the Sentencing Reform Act. 567 U.S. at 273–75. Moreover, in *Dorsey*, the issue arose because "relevant language in different statutes argue[d] in opposite directions." *Id.* at 272. There is no such issue here.

And as Baltimore demonstrated in its opening brief, the United States Code is brimming with statutes that contain express reference requirements, and courts regularly give these requirements effect. *See* Pl. Br. 20–23. It would be paradoxical if all these express reference requirements could be overruled through simple silence and re-enactment of earlier statutes (unsurprisingly, ATF fails to identify a single case outside the Tiahrt context which adopts its view). Even more problematic for ATF is that Congress was undoubtedly aware of the express citation requirement in the OPEN FOIA Act when it enacted the 2012 Tiahrt Rider, so much so that during that time it also drafted and passed numerous provisions that included specific reference to 5 U.S.C. § 552(b)(3). *See* Pl. Br. 19 n.9. Yet, ATF would have this Court adopt the view that, for the 2012 Tiahrt Rider only, Congress acted through silence.

At bottom, ATF, and the Second Circuit opinion on which it relies, would disregard the OPEN FOIA Act based on an inference from Congress's re-enactment of earlier Tiahrt Rider language, which some pre-OPEN FOIA Act courts had held to qualify as a withholding statute. Gov. Opp. 2–3; *but see Beretta*, 429 F. Supp. 2d at 526 (holding that "all such data" clause refers only to trace data disclosed to law enforcement). But it takes significantly more than this to override an express reference requirement, particularly since the plain text of the 2012 Tiahrt Rider does not actually bar disclosure. In fact, this exact argument was rejected by a case on which ATF relies: "It may be the case in some settings that Congress is presumed to be aware of an administrative or judicial interpretation to a statute and to adopt that interpretation when it re-enacts a statute without change. But Congress presumably is equally aware of [its express reference rules.]" *Mann Constr., Inc. v. United States*, 27 F.4th 1138, 1147 (6th Cir. 2022) (internal quotation marks omitted); *see also Canadian Lumber Trade All. v. United States*, 517 F.3d 1319, 1343 (Fed. Cir. 2008) ("[T]he much simpler inference to draw from Congress' silence . . . is that Congress,

being aware of its earlier enactment . . . , chose not to supercede [it] nor to exempt the [later enactment] from it.").

Finally, even if this Court decides not to apply the OPEN FOIA Act on its plain terms, the Act at a bare minimum serves as "an important background principle of interpretation." *Dorsey*, 567 U.S. at 274; *see* Pl. Br. 26–28. Before interpreting a later-enacted statute to be at odds with an earlier enacted statute, courts need "to assure themselves that ordinary interpretive considerations point clearly in that direction." *Dorsey*, 567 U.S. at 275. Here, familiar canons of statutory construction—including attention to the statute's plain text, the presumption against implied repeals, the preference for interpreting two statutes in harmony rather than in conflict, the presumption that Congress enacts new provisions of law aware of its prior provisions of law—all counsel that the 2012 Tiahrt Rider does not "point clearly in th[e] direction" of being an Exemption 3 statute. Further, FOIA itself "mandates a 'strong presumption in favor of disclosure.'" *ACLU v. U.S. Dep't of Just.*, 655 F.3d 1, 5 (D.C. Cir. 2011) (quoting *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002)).

ATF's position is precisely the type of outcome that Congress intended to avoid when it enacted the OPEN FOIA Act to battle "exemption creep," which interfered with "the American public's right to know." 155 Cong. Rec. S3175 (daily ed. Mar. 17, 2009) (statement of Sen. Patrick Leahy). It therefore should be rejected.

## II.   EVEN IF THE COURT FINDS THAT THE 2012 TIAHRT RIDER IS A WITHHOLDING STATUTE, THE RECORDS BALTIMORE SEEKS SHOULD BE DISCLOSED BECAUSE THEY FALL WITHIN SUBPART C.

There is no dispute that the 2012 Tiahrt Rider's funding prohibition is inapplicable to "the publication of annual statistical reports on products regulated by [ATF] . . . or statistical aggregate data regarding firearms traffickers and trafficking channels, or firearms misuse, felons, and trafficking investigations." *See* Gov. Opp. 8 (quoting the 2012 Tiahrt Rider's Subpart C exception).

In its opposition brief, ATF does not dispute that Baltimore seeks "statistical aggregate data regarding firearms traffickers and trafficking channels, or firearms misuse[.]"[7] *Id.* It argues only that the term "publication" refers exclusively to reports published *by ATF* and that the release of aggregated data pursuant to a FOIA request "would eviscerate the rider's general prohibition on disclosure." *Id.* at 10 (quoting *Everytown*, 984 F.3d at 44).

Starting with the latter point first, even accepting ATF's argument that the 2012 Tiahrt Rider is a general bar on disclosure, it is unclear how releasing aggregated data undermines the overall purpose of the rider, since everyone agrees that release of such data is permitted in a report form. What would be the reason for allowing the release of the exact same data in a report form but not via FOIA?[8] In any form that it is released, statistical aggregate data furthers ATF's very mission in supplying statistical reports: "to provide the public with insight into firearms recoveries."[9]

ATF also argues that Baltimore misinterprets the statute's use of the word "publication." Gov. Opp. 8–10. ATF takes its cue from the Second Circuit in *Everytown* and argues that Baltimore's interpretation of the word "publication" in Subpart C renders it synonymous with the word "disclosure." Not so. "Publication" refers to making something known to the public.

---

[7] In its opening brief, ATF appeared to dispute whether Parts 3 and 4 of Baltimore's Request call for aggregate data. Gov. Br. 17. Baltimore observed that "because ATF has not described the underlying tables and spreadsheets, it is unclear what portions of [Parts 3 and 4] would be covered by Subpart C." Pl. Br. 30 n.16. Now, in its Opposition, rather than offering further clarification, ATF appears to concede that Baltimore's Request seeks "aggregate data." *See* Gov. Opp. 8. In either case, Parts 1 and 2 of the Request clearly state that Baltimore will accept records "on either an aggregate or individualized basis."

[8] ATF's interpretation makes sense only if the sole purpose of the 2012 Tiahrt Rider was to serve as a FOIA withholding statute, but no one argues that this is the case.

[9] Bureau of Alcohol, Tobacco, Firearms and Explosives, *Firearms Trace Data – 2022*, https://www.atf.gov/resource-center/firearms-trace-data-2022 (last reviewed Oct. 11, 2023).

Publication, *Black's Law Dictionary* (12th ed. 2024); *see also* Pl. Br. 31; *CIR*, 14 F.4th at 934 ("The plain meaning of 'publication' signifies 'disclosure to the public, rather than the disclosure of information to another individual or corporation within the context of a business or professional relationship.'" (quoting *Integrated Genomics, Inc. v. Gerngross*, 636 F.3d 853, 861 (7th Cir. 2011))). "Disclosure," on the other hand refers generally to revealing information or making something known. Disclosure, *Black's Law Dictionary* (12th ed. 2024). Subpart A of the 2012 Tiahrt Rider[10] uses the term "disclosure," while Subpart C uses the term "publication." Under Baltimore's reading, the two terms are not synonymous. A smaller percentage of requests will fall under Subpart C than Subpart A because, while "disclosure" can be effectuated by revealing information to anyone, "publication" can only be effectuated by revealing information to anyone *who will then make that information known to the public*. *See CIR*, 14 F.4th at 935 n.16 ("For though the Tiahrt Rider permits the use of funds to enable 'publication' it never states that such 'publication' must come at the direct hand of ATF."). And as Baltimore has attested to, it intends to share the data with the public at large. Pl.'s Stmt. of Add'l Mat. Facts ¶ 15.

Additionally, ATF's restrictive reading of Subpart C is unsupported by its prior positions. ATF points to the House Reports from 2004 and 2007 as evidence that Congress enacted Subpart C "to permit the publication of statistical reports by ATF." Gov. Opp. 9–10. But as ATF's then-Acting Director testified, the Tiahrt Rider *never* prohibited ATF from publishing aggregate trace information to the public.[11] ATF has also recently disclosed aggregated firearms data under

---

[10] The text of Subpart A of the 2012 Tiahrt Rider reads: "this proviso shall not be construed to prevent . . . (A) the disclosure of statistical information concerning total production, importation, and exportation by each licensed importer (as defined in section 921(a)(9) of such title) and licensed manufacturer (as defined in section 921(a)(10) of such title)."

[11] *See Com., Just., Sci., & Related Agencies Appropriations for 2009: Hearings Before the Subcomm. on Com., Just., Sci. & Related Agencies of the H. Comm. on Appropriations, Part 5,*

Subpart C in response to a FOIA request. *See* Champe Barton, *Avoiding a Legal Battle, the ATF Has Released Near-Unprecedented Gun Trafficking Data*, The Trace (June 19, 2024) (describing how the ATF recently disclosed statistical aggregate data pertaining to the origin of guns smuggled from the U.S. to Mexico and Central America).[12] ATF therefore has not maintained that the only statistical aggregate data able to be produced is that which ATF chooses to publish itself.

## III.    DISCLOSURE WOULD NOT REQUIRE THE CREATION OF NEW RECORDS.

ATF argues that Parts 1 and 2 of Baltimore's FOIA Request would require ATF to create new records. Gov. Opp. 11. ATF professes that its "position is not that aggregate statistical data in the FTS database are immune from release under FOIA because they must be retrieved by a query of the database; rather ATF's argument is that producing 'aggregate statistical data' requires the creation of records that presently do not exist." *Id.* (quoting Wood. Decl. ¶¶ 24–26). ATF asserts that "after pulling the relevant data by searching the FTS database using the criteria identified by Plaintiff, ATF must further analyze and compare the pulled data to 'aggregate' it by, among other things, analyzing many free-form fields of associated recovery locations and purchaser information." *Id.* at 12. Of course, this argument does not apply to the release of individualized

---

110th Cong. 197 (2008) (statement of Acting Dir. Michael Sullivan) ("There was a period of time where [aggregate tracing information state by state] was not being publicly shared with the non-law enforcement community. But it wasn't because Tiahrt Amendment prevented us from doing it. . . . It was at a time when our budget was challenging."); *Confirmation Hearings on Fed. Appointments: Hearings Before the S. Comm. on the Judiciary*, *Part 2,* 110th Cong. 233 (2009) (Acting Dir. Michael J. Sullivan Responses to Questions of Sen. Charles Schumer) ("I do not believe that the Tiahrt Amendment prohibits the publishing of reports. In every appropriation since the inception of the Tiahrt Amendment in 2003, Congress has also enacted language requiring that ATF Tracing Studies contain a disclaimer to make it clear that trace data cannot be used to draw broad conclusions about firearms-related crime. The inclusion of this provision indicates that ATF may publish tracing studies.") (internal citation omitted).

[12] Available at https://perma.cc/9FGA-RLHD.

data and Baltimore's Request sought production of records in either individualized or aggregate form.

But, in any case, this tortured explanation of the process does not reflect what Baltimore is actually seeking. As just one example, the first section of Part 1 of Baltimore's FOIA Request seeks "[r]ecords sufficient to identify the federally licensed firearms dealers ('FFL') that are the top ten sources of firearms recovered in Baltimore from 2018 through 2022." Gov.'s Stmt. of Mat. Facts. ¶ 17. To do this, ATF would need to filter the FTS database for two variables that indisputably exist in the database: date range and recovery location. Then, by producing the resulting data from the columns/fields showing the source FFL and date of recovery, the job would be done, save for redacting any confidential information (which ATF would have to do with respect to any production).

Alternatively, ATF could provide the data counts for this criterion by producing counts of the resulting columns/fields. As the district found in *Everytown for Gun Safety Support Fund v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, ATF has "fail[ed] to demonstrate that producing data entry counts from its Firearms Tracing System database would require it to create new records." 403 F. Supp. 3d 343, 357 (S.D.N.Y. 2019), *overruled on other grounds*, 984 F.3d 30 (2d Cir. 2020); *see also id.* ("ATF concedes that the search required to generate the raw data Everytown requests is required by FOIA and that producing equivalent data counts from a paper records system would not constitute records creation.").

ATF's resistance to producing the requested records is particularly unwarranted here given that ATF advertises the ease with which participating law enforcement officials can use eTrace (a database based on the FTS database) to pull such data counts, including by generating a report that would identify the "Top Firearms Retailers to Whom Firearms are Traced." Bureau of Alcohol

Tobacco, Firearms and Explosives, ATF Firearms Tracing Guide: Tracing Firearms to Reduce Violent Crimes 12 (March 2012).[13] It is evident then that if law enforcement officials can easily generate such data, without the need for extensive cleaning and analyzing, ATF has the capability to also easily generate such data.

Further, ATF's argument does not match what Elizabeth Wood, Acting Director of ATF's Information and Privacy Governance Division, attested to. Director Wood's declaration spoke only of the search and cleaning process. Wood. Decl. ¶¶ 24–26. Such a search is, as ATF now concedes, not the creation of a new record, *CIR*, 14 F.4th at 938–39, and Baltimore has already attested it has staff members able to clean the requested data itself. Pl.'s Stmt of Add'l Mat. Facts ¶ 6. Director Wood also attests that "ATF has never prepared any reports summarizing the specific statistical summaries sought in Plaintiff's FOIA request." Wood Decl. ¶ 24. That may be true, but "[t]he fact that the . . . net result of complying with the request will be a document the agency did not previously possess is not unusual in FOIA cases, nor does this preclude the applicability of the Act." *Schladetsch v. U.S. Dep't of HUD*, No. 99-cv-0175, 2000 WL 33372125, at *3 (D.D.C. Apr. 4, 2000).

*National Security Counselors v. CIA*, 898 F. Supp. 2d 233 (D.D.C. 2012), on which ATF relies, supports Baltimore's position. In that case, plaintiff complained about the CIA's policy of refusing to process FOIA requests seeking "aggregate data." *Id.* at 268. There, the court differentiated between requests asking for the creation of a listing of database results (where no such listing previously existed), which "may" constitute the creation of a new record, and asking for the underlying data points themselves, which does not constitute a new record. *Id.* at 268–72.

---

[13]    Available    at    https://www.atf.gov/firearms/docs/guide/atf-firearms-tracing-guide-atf-p-331213/download.

The key distinction is whether the request seeks the contents of a database, or "information about those contents." *Id.* at 271. Here, Baltimore has requested the contents. *See* Gov.'s Stmt of Mat. Facts. ¶ 17; *see also Nat'l Sec. Couns.*, 898 F. Supp. 2d at 272 ("[A]lthough the CIA may not be required to produce an index or database listing in repose to a FOIA request, it *can* be required to hand over the contents of entire databases of information to the extent those contents are not exempt from disclosure.").

ATF attempts to make hay of Baltimore's offer to "accept records requested . . . on either an aggregate or individualized basis," Gov.'s Stmt of Mat. Facts. ¶ 17, asserting that Baltimore has asked ATF to "aggregate" the data. Gov. Br. 12. Baltimore's reference to "individualized or aggregate" merely expresses that Baltimore is indifferent as to whether ATF's query generates, for example, a single figure that itself reflects the top ten FFLs, or if it generates many figures that collectively (once analyzed by Baltimore) reflects the top ten FFLs. *Nat'l Sec. Couns.*, 898 F. Supp. 2d at 271 (explaining that "it is important to note that it is not unprecedented for a federal agency to produce entire fields of data from particular electronic databases in response to a FOIA request" and that "such requests could certainly be considered requests for 'aggregate data'").

This case is similar to *Schladetsch*. There, the court held that "[b]ecause HUD has conceded that it possesses in its databases the discrete pieces of information which Mr. Schladetsch seeks, extracting and compiling that data does not amount to the creation of a new record." *Schladetsch*, 2000 WL 33372125, at *3. Here too, ATF concedes that it possesses all the information plaintiff has requested in its FTS database. Wood Decl. ¶ 23. Therefore, ATF need simply extract and compile this data. And even if ATF has not already prepared the subset of FTS data that Baltimore seeks, this does not amount to the creation of a new record. *See also Long v. CIA*, No. 15-cv-1734, 2019 WL 4277362, at *4 (D.D.C. Sep. 10, 2019) ("[Plaintiffs] seek certain

data fields that the CIA concedes exist within the database. Thus, compiling these records does not constitute the creation of a new record.") (citation omitted) (citing *Nat'l Sec. Couns.*, 898 F. Supp. 2d at 270).

<strong>CONCLUSION</strong>

For the aforementioned reasons, the Court should grant Baltimore's motion for summary judgment, and deny the government's motion.

Respectfully submitted,

*/s/ Gary A. Orseck*

| | |
|---|---|
| EBONY MONET THOMPSON | Gary A. Orseck (D.C. Bar # 433788) |
| City Solicitor | Paul Brzyski* (D.C. Bar # 1723545) |
| BALTIMORE CITY | KRAMER LEVIN NAFTALIS & FRANKEL LLP |
| DEPARTMENT OF LAW | 2000 K Street NW, 4th Floor |
| Sara Gross* | Washington, DC 20006 |
| Chief, Affirmative Litigation Division | Tel: (202) 775-4500 |
| Thomas P.G. Webb* | Fax: (202) 775-4510 |
| Chief Solicitor | gorseck@kramerlevin.com |
| City Hall | |
| 100 North Holiday Street, Suite 109 | Alla Lefkowitz* (D.C. Bar # 1048271) |
| Baltimore, Maryland 21202 | EVERYTOWN LAW |
| Tel: (410) 396-3947 | P.O. Box 14780 |
| Fax: (410) 574-1025 | Washington, DC 20044 |
| Sara.Gross@baltimorecity.gov | Tel: (202) 545-3257 |
| Tom.Webb@baltimorecity.gov | alefkowitz@everytown.org |
| | |
| | Aaron Esty* |
| | Mollie Krent* |
| | EVERYTOWN LAW |
| | 450 Lexington Avenue, P.O. Box 4184 |
| | New York, NY 10017 |
| | Tel: (646) 324-8369 |
| | aesty@everytown.org |
| | mkrent@everytown.org |
| | |
| | *Admitted pro hac vice* |

Dated: July 12, 2024